**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARFIELD GAYLE, | : |
| Petitioner | : Civil Action No. 12-2806 (FLW) |
| v. | : |
| | : **OPINION** |
| JANET NAPOLITANO, et al., | : |
| Respondent | : |

**WOLFSON, United States District Judge:**

Garfield Gayle ("Petitioner" or "Gayle") is currently being detained by the Department of Homeland Security, Immigration and Customs Enforcement ("DHS/ICE") at the Monmouth County Correctional Facility in Freehold, New Jersey, pending his removal from the United States. On or about May 10, 2012, Petitioner filed a petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, in which he challenges his pre-removal mandatory detention. According to Respondents[1] (hereinafter, "the Government" or

---

[1] Janet Napolitano, Secretary of the DHS; Eric Holder, United States Attorney General; John Morton, Director of ICE; Juan Osuna, Director of the Office of Immigration Review; John Tsoukaris, Field Office Director for Enforcement and Removal Operations, Newark Field Office of ICE; Christopher Shanahan, Field Office Director for Enforcement and Removal Operations, New York City Field Office of ICE; Ray Simonse, Acting Field Office Director for Enforcement and Removal Operations, New York City Field Office of ICE; Robert Bigott, Warden of the Bergen County Jail; Joseph Trabucco, Director of the Delaney Hall Detention Facility; Orlando Rodriguez, Warden of the Elizabeth Contract Detention Facility; Roy L. Hendricks, Warden of the Essex County Correctional Facility; Oscar Aviles, Director of the Hudson County

"Respondents"), this detention is authorized by 8 U.S.C § 1226(c), which states that "[t]he Attorney General shall take into custody any alien [specified in this section], when the alien is released." On or about November 15, 2012, Petitioner filed an Amended Petition for Writ of Habeas Corpus on his own behalf and on behalf of a class consisting of individuals claiming to be subjected to unauthorized mandatory immigration detention under 8 U.S.C. § 1226(c).[2] This Opinion deals solely with Petitioner's individual request for habeas relief.[3]

For the reasons stated below, the Court grants Gayle's request for habeas relief, and directs an Immigration Judge to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2), to determine if Petitioner is a flight risk or danger to the community.

## BACKGROUND

Petitioner states that he is a Jamaican national and a lawful permanent resident of the United States. Petition at ¶ 24. He has lived in the United States for approximately 30 years, most of the time in New York City. In 1995, Petitioner was convicted of criminal possession of a controlled substance with the intent to sell in the third degree under New York State Penal Law § 220.16. He served approximately two years of jail time and was released on parole in June 1997. After satisfying all conditions of parole, Petitioner was discharged in May 2001. *Id.* at ¶ 26. Thereafter, in March 2007, Petitioner was sentenced to ten days in jail for a misdemeanor controlled substance offense. *Id.* at 28.

---

Correctional Facility; and Brian Elwood, Warden of the Monmouth County Correctional Institution.
[2] Two other individuals, Sheldon Francois and Neville Sukhu, joined in the suit on their own behalves and as class representatives.
[3] Petitioner requested by letter dated February 13, 2013 that the Court consider his request for a hearing immediately.

Approximately five years later, on March 24, 2012, a team of ICE officers arrested Petitioner at his home in Brooklyn. ICE charged Petitioner with removal on the grounds that his 1995 conviction rendered him deportable, and also found him subject to mandatory detention based on his March 2007 offense.[4] *Id.* at 27.

Petitioner sought to terminate his removal proceedings, and on October 23, 2012, the Immigration Judge denied Petitioner's request. Petitioner was then scheduled for a master calendar hearing on October 31, 2012, at which time the Immigration Judge would have ruled on his eligibility for cancellation of removal. This hearing was postponed due to Hurricane Sandy and rescheduled for January 30. *See* Declaration of Lawanda Charles ¶ 15.

On November 15, 2012, Petitioner filed am Amended Petition for Writ of Habeas Corpus asserting that DHS lacks the statutory authority to detain him under 8 U.S.C. § 1226(c), because it failed to take him into custody when he was released from criminal incarceration in 2007, but instead waited five years from the date of his 2007 incarceration to arrest him. In that regard, Petitioner argues that the phrase "when … released" unambiguously requires immediacy, and that because DHS failed to take him into custody immediately upon his release in 2007, he is not subject to mandatory detention, and is instead entitled to a bond hearing before an Immigration Judge, as required by § 1226(a).

Respondents filed a response on December 4, 2012, arguing that § 1226(c) authorizes Petitioner's pre-removal mandatory detention. (Dkt. 20). The response relies, in large part, on what Respondents perceive as an ambiguity in the phrase "when …

---

[4] Petitioner's 1995 conviction does not subject him to mandatory detention because he was released from custody prior to the effective date of § 1226(c).

3

released" found in § 1226(c). This ambiguity, Respondents claim, requires this Court to defer, under *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), to a ruling by the Board of Immigration Appeals ("BIA") finding an alien subject to mandatory detention despite the fact that he was not taken into custody immediately upon his release.  Petitioner then filed a reply brief pointing out that Respondents have raised no new arguments that have not already been considered and rejected by me in previous opinions.[5]

**I. Jurisdiction**

Under 28 U.S.C § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless … [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within its jurisdiction in the custody of DHS/ICE at the time he filed his petition, *see Spencer v. Kenna*, 523 U.S. 1, 7 (1998), and because Petitioner asserts that his mandatory detention is not statutorily authorized by 8 U.S.C § 1226(c). *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Diop v. ICE/Homeland Security*, 656 F.3d 221, 226 (3d Cir. 2011).

---

[5] This issue is currently pending before the Third Circuit in two competing cases. *Sylvain v. Holder,* C.A. No. 11–3357 (3d Cir. docketed Aug. 31, 2011) (DHS appealed an order granting habeas relief and ordering a bond hearing); *Desrosiers v. Hendricks,* C.A. No. 12–1053 (3d Cir. docketed Jan. 11, 2012) (petitioner's appeal of order denying habeas relief).

**II. Statutory Framework for Detention During Removal Proceedings**

Section 1226 governs the pre-removal detention of an alien. Section 1226(a) authorizes the Attorney General to arrest and detain an alien pending a decision on whether the alien is to be removed from the United States, except as provided in subsection (c). *See* 8 U.S.C. § 1226(a). Detention under section 1226(a) is discretionary – the Attorney General may release the alien on bond or parole. An alien also has the right to a hearing before an immigration judge to determine whether the alien should be released on bond, pending any challenge to removal and a decision as to whether that alien is to be removed. *Id.* However, the exception in § 1226(c) commands that the Attorney General "shall take into custody any alien … when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c)(1). An alien detained under § 1226(c) must be detained until his removal is final, regardless of whether he is a flight risk or danger to the community, unless the Attorney General determines that the alien should be part of the federal witness protection program, and provided that detention has not become unreasonably prolonged. *See Diop v. ICE/Homeland Sec.*, 656 F.3d at 232 ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community"). Section 1226 provides in full:

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from

> the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General—
> > (1) may continue to detain the arrested alien; and
> > (2) may release the alien on—
> > > (A) bond of at least $1,500.; or
> > > (B) conditional parole; but
> > (3) may not provide the alien with work authorization ... unless the alien is lawfully admitted for permanent residence or otherwise would ... be provided such authorization.
>
> (b) Revocation of bond or parole
>
> The Attorney General at any time may revoke a bond or parole authorized under subsection (a) of this section, rearrest the alien under the original warrant, and detain the alien.
>
> (c) Detention of criminal aliens
> > (1) Custody
> >
> > The Attorney General shall take into custody any alien who—
> > > (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> > > (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> > > (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
> > > (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
> >
> > when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
> >
> > (2) Release
> >
> > The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226.

Petitioner was charged as removable on September 27, 2011, on the basis of his 1995 conviction. He was subsequently detained in March 2012, and remains in custody. According to the Government, Petitioner is subject to mandatory detention because of his 2007 misdemeanor drug conviction and release from the related incarceration. Petitioner argues that because the Government failed to take him into custody "when… released" from his 2007 incarceration, his detention is not authorized under § 1226(c). However, the Government reasons that the phrase "when the alien is released" is ambiguous and does not require that an alien is to be taken into custody immediately upon his release, but means that an alien may be taken into custody any time after the alien is released. Thus, the outcome of this case depends on the clarity and meaning of the following words in § 1226(c)(1): "The Attorney General shall take into custody any alien [specified in this section], when the alien is released…[.]" 8 U.S.C. § 1226(c)(1) (emphasis and ellipses added).

Respondents contend that because "when… released" in § 1226(c) is ambiguous, this Court should defer, under *Chevron*, to the BIA's interpretation of § 1226(c) in *Matter of Rojas*, 23 I. & N. Dec. 117 (BIA 2001). In that regard, Respondents also ask this Court to reconsider and depart from its prior rulings regarding the interpretation of § 1226(c) in *Christie v. Elwood*, Civil No. 11-7070(FLW), 2012 WL 266454, at *7-9 (D.N.J. Jan. 30, 2012); *Kot v. Elwood*, Civil No. 12-1720(FLW), 2012 WL 1565438, at *5-9 (D.N.J. May 2, 2012); *Nimako v. Shanahan*, No. 12-4909 (FLW), 2012 WL 4121102, at *7-8 (D.N.J. Sept. 18, 2012); *Baguidy v. Elwood*, No. 12-4635(FLW), 2012 WL 5406193, at *8-10 (D.N.J. Nov. 5, 2012); *Kerr v. Elwood*, No. 12-6330(FLW), 2012 WL 5465492 (D.N.J. Nov. 8, 2012). Instead, Respondents urge this Court to follow a recent decision issued by

the United States Court of Appeals for the Fourth Circuit in *Hosh v. Lucero*, 680 F.3d 375 (4th Cir. 2012), in which the Fourth Circuit found the word "when" in § 1226(c) to be ambiguous, and thus, deferred to *Rojas*.

### A. The BIA's Holding in *Matter of Rojas*

*Matter of Rojas* involved an alien's appeal to the BIA of the Immigration Judge's rejection of the argument that Rojas was not subject to mandatory detention under § 1226(c)(1) because the government failed to apprehend him at the time of his release from incarceration for an offense covered by § 1226(c), and instead waited two days before taking him into custody. *See Matter of Rojas*, 23 I. & N. Dec. 117. The BIA determined that the language in § 1226(c)(1) is not clear, but is susceptible to different readings. *Id.* at 120. The BIA

> construe[d] the phrasing "an alien described in paragraph (1)," as including only those aliens described in subparagraphs (A) through (D) of section [1226(c)(1)], and as not including the "when released" clause. [BIA's] interpretation is derived from the natural meaning of the statutory language, from the object and design of the statute as a whole, and from the history of the mandatory detention provisions. It is reinforced by practical concerns that would otherwise arise.

*Id.* at 125.

However, earlier in its opinion, the BIA also stated that "[t]he statute does direct the Attorney General to take custody of aliens <u>immediately</u> upon their release from criminal confinement."[6] *Id.* at 122 (emphasis added).

Nonetheless, the BIA ultimately held that Rojas "is subject to mandatory detention pursuant to section [1226(c)], despite the fact that he was not taken into

---

[6] It is unclear why the BIA, once it ascertained the meaning of the "when… released" language, continued its analysis and ultimately issued an opinion inconsistent with its finding.

8

Service custody immediately upon his release from state custody." *Matter of Rojas*, 23 I. & N. Dec. at 127. However, the findings of the BIA were not unanimous.[7] In stark disagreement with the majority, board member Lory Diana Rosenberg wrote a dissenting opinion in which six other board members joined. The dissent reasoned:

> The word " 'when' [is defined] as 'just after the moment that.' " *Alikhani v. Fasano*, 70 F.Supp.2d 1124, 1130 (S.D. Cal. 1999) (quoting *Webster's Third New International Dictionary* 2602 (3d ed. 1976). Therefore, as one court noted, the clear language of the statute requires that "the mandatory detention of aliens 'when' they are released requires that they be detained at the time of release." *Alikhani v. Fasano*, supra, at 1130; *see also Velasquez v. Reno*, 37 F.Supp.2d 663, 672 (D.N.J. 1999) ("This court cannot simply ignore the plain language of the statute which provides that an alien is to be taken into custody 'when the alien is released.' "). As another court noted, "Congress could have required custody 'regardless of when the alien is released' or 'at any time after the alien is released,' " but did not do so. *Alwaday v. Beebe*, 43 F. Supp. 2d 1130, 1133 (D. Or. 1999).... These courts have concluded uniformly that "[t]he plain meaning of this language is that it applies immediately after release from incarceration, not to aliens released many year [s] earlier." *Pastor–Camarena v. Smith*, supra, at 1417–18.

*Matter of Rojas*, 23 I. & N. Dec. at 132–33 (Rosenberg, dissenting).

The dissenting opinion cogently concluded:

> The stretch of interpretation required by the majority's construction is not supported by the plain language of the statute and is unreasonable. The aliens described in paragraph (1) of section [1226(c) ] are the ones who are deemed to be inadmissible and deportable for the cited violations and taken into custody when they are released from criminal incarceration. These are the aliens described in paragraph (2) as the ones who may not be released.
>
> The interpretation I reach from a straightforward reading of the plain language of the statute would allow for a hearing when an individual alien, such as this respondent, has already been released into the community, and it would authorize the detention of such individuals where warranted following an individualized hearing.

---

[7] In addition to the dissent, discussed *infra*, two BIA members filed a concurring and dissenting opinion, joining in the BIA's result but not its reasoning.

*Matter of Rojas*, 23 I. & N. Dec. at 139 (Rosenberg, dissenting).

I find, consistent with my prior rulings, that I am not required to defer to the BIA's interpretation of § 1226(c) and I decline the Government's invitation to hold otherwise. Under *Chevron*, if "Congress has directly spoken to the precise question at issue," a court and an agency "must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43. In the immigration context, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent. If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 447–48 (1987) (quoting *Chevron*, 467 U.S. at 843 n. 9). Deference to an agency's interpretation of a statute "is called for only when the devices of judicial construction have been tried and found to yield no clear sense of congressional intent." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581 (2004).

In order to defer to the BIA's construction in *Matter of Rojas*, this Court would have to first find that when Congress wrote that the Attorney General "shall take into custody any alien [specified in this section], when the alien is released," Congress intended it to mean that the Attorney General "shall take into custody any alien [specified in this section], any time after the alien is released." This Court would also have to ignore the fact that the BIA itself found that "[t]he statute does direct the Attorney General to take custody of aliens immediately upon their release from criminal confinement," before inexplicably continuing its analysis and issuing a ruling inconsistent with that interpretation. *Matter of Rojas*, 23 I. & N. Dec. at 122. This Court has not previously

10

adopted such a strained reading of the statute and will not do so now. Instead, I concur that:

> Rather than taking the plain meaning of the statute, the government has re-written the statute ... The command that "the Attorney General shall take into custody any alien [specified in this section] when the alien is released" means just what it says, i.e., the Attorney General shall take the alien into custody when the alien is released. Because taking the alien into custody more than [five years] after the alien is released does not fall within the command to take the alien into custody when the alien is released, the BIA's interpretation is contrary to the plain meaning of [§ 1226(c) ].

*Parfait v. Holder*, 2011 WL 4829391 (D.N.J. Oct. 11, 2011).

Almost every federal court considering the issue shares this Court's reading of § 1226(c). *See, e.g.*, *Beckford v. Aviles*, 2011 WL 3515933 (D.N.J. Aug. 9, 2011); *Sylvain v. Holder*, 2011 WL 2580506 at *7 (D.N.J. June 28, 2011) ("Respondents also argue that the statute is ambiguous because it is plausible that the word 'when' means 'after,' and, in that case, the statute commands that the government 'shall take the alien into custody after the alien is released.' This Court rejects the argument that 'when' means 'after.' "); *Keo v. Lucero*, 2011 WL 2746182 *3 (E.D. Va. July 13, 2011) ("[t]he term 'when' includes the characteristic of 'immediacy,' referring in its primary conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun") (citations omitted); *Louisaire v. Muller*, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) ("*Matter of Rojas*, however, is wrong as a matter of law and contrary to the plain language of the statute. The clear purpose of § 1226(c)(1) is to authorize the mandatory detention of immigrants who have committed offenses enumerated within § 1226(c)(1)(A)-(D) immediately upon their release from criminal sentences for those same offenses, even if they are still serving part of their sentence out in the community, under

11

'parole, supervised release, or probation' "); *Dang v. Lowe*, 2010 WL 2044634 (M.D. Pa. May 20, 2010) (holding that § 1226(c)(1) does not apply where alien was not taken into immigration custody until 10 years after release from incarceration for an enumerated offense); *Khodr v. Adduci*, 697 F. Supp. 2d 774, 774–75 (E.D. Mich. 2010) ("Because the Court finds that the statute at issue clearly and unambiguously requires the Attorney General to take into custody certain aliens without delay in order to make applicable the mandatory detention provisions of 8 U.S.C. § 1226(c), the Court does not defer to the Board of Immigration Appeals' decision to the contrary in *Matter of Rojas*" ); *Scarlett v. DHS*, 632 F. Supp. 2d 214, 219 (W.D.N.Y. 2009) ("the statute does not apply when the alien was not taken into immigration custody at the time of his release from incarceration on the underlying criminal charges"); *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 488 (E.D. Va. 2007) ("the mandatory detention statute ... does not apply to an alien ... who has been taken into immigration custody well over a month after his release from state custody" for an enumerated offense). *But see Diaz v. Muller*, 2011 WL 3422856 (D.N.J. Aug 04, 2011) (finding "when released" to be ambiguous); *Gomez v. Napolitano*, 2011 WL 2224768 (S.D.N.Y. May 31, 2011) (same); *Sulayao v. Shanahan*, 2009 WL 3003199 (S.D.N.Y. Sept. 15, 2009) (same).

  My reading of § 1226(c) is also consistent with the First Circuit's interpretation of the statute in *Saysana v. Gillen*, 590 F.3d 7 (1st Cir. 2009). In *Saysana*, Massachusetts released Mr. Saysana in 1991 from a five-year sentence for a 1990 (removable) conviction. In 2007, DHS took him into custody under 8 U.S.C. § 1226(c)(1), and initiated removal proceedings charging that the 1990 conviction qualified as an aggravated felony rendering him removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).

12

*See Saysana*, 590 F.3d at 9. In a precedential decision, *Matter of Saysana*, 24 I. & N. Dec. 602 (BIA 2008), the BIA held that Saysana was covered by the "when the alien is released" language of § 1226(c) because he was released from state custody on a dismissed non-removable charge after October 8, 1998. *See Saysana*, 590 F.3d at 9. The First Circuit held, however, that, because the plain meaning of § 1226(c) was contrary to the BIA's reading of the statute, *Chevron* deference was not permissible.

> In our view, the natural reading of the statutory provision from top to bottom makes clear that the congressional requirement of mandatory detention is addressed to the situation of an alien who is released from custody for one of the enumerated offenses. The statutory language embodies the judgment of Congress that such an individual should not be returned to the community pending disposition of his removal proceedings. Both the language and the structure of the statutory provision state this mandate in a clear and straightforward manner. As explained ... in *Oscar v. Gillen*, 595 F.Supp.2d 166[, 170] (D. Mass. 2009) (Tauro, J.):
>
>> The "when released" provision immediately follows the list of enumerated offenses, indicating that the former modifies the latter. Additionally, § 1226(c) provides that the alien shall be detained upon release regardless of whether he is subsequently arrested for the "same offense," reinforcing the notion that the entire clause applies to the list of enumerated offenses immediately preceding it.

*Saysana*, 590 F.3d at 13.

As I have articulated previously, *Saysana* clearly envisions a continuous chain of custody of dangerous aliens: "The Court is not persuaded that the legislature was seeking to justify mandatory immigration custody many months or even years after an alien had been released from state custody." *Saysana*, 590 F.3d at 16 (quoting *Quezaa-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1230 (W.D. Wash. 2004)); *see also Baguidy*, 2012 WL 5406193, at *8; *Nimako*, 2012 WL 4121102, at *7. The Third Circuit has also read § 1226(c) as envisioning a continuous chain of custody. In *Diop v. ICE/Homeland Sec.*,

13

656 F.3d at 231, the Circuit noted that in enacting § 1226(c), "Congress was concerned with the immigration authorities' 'wholesale failure' to 'deal with the increasing rates of criminal activity by aliens.' § 1226(c) was intended to remedy this perceived problem by ensuring that aliens convicted of certain crimes would be present in their removal proceedings and not on the loose in their communities, where they might pose a danger." These concerns are consistent with those of *Saysana*. *Saysana*, 590 F.3d at 17-18 ("By any logic, it stands to reason that the more remote in time a conviction becomes and the more time after a conviction an individual spends in a community, the lower his bail risk is likely to be"). I also noted this concern in *Nimako*. *Nimako*, 2012 WL 4121102, at *7 ("The Government also disregards the consistency in this Court's and Saysana's reading of § 1226(c) as clearly envisioning a continuous chain of custody of dangerous aliens[.]"). *Saysana* ultimately concluded that "because the 'when released language is unambiguous,' there is nothing for the agency to interpret – no gap for it to fill – and there is no justification for resorting to agency interpretation to address an ambiguity." *Saysana* at 16. This Court agrees and again declines to follow *Matter of Rojas* and instead follows the persuasive interpretation given the statutory language by the *Saysana* court.

### B. The Fourth Circuit's Decision in *Hosh v. Lucero*

Respondents urge this Court to depart from its prior precedent and instead follow the Fourth Circuit's ruling in *Hosh v. Lucero*, 680 F.3d 375 (4th. Cir. 2012).[8] Based on the following analysis, the Fourth Circuit held that § 1226(c) is ambiguous:

---

[8] Also in support of its contention that § 1226(c) is ambiguous, Petitioners rely upon an 1807 Supreme Court case dealing with the meaning of "when" in the context of the post-sale registration of boats. *United States v. Willings*, 8 U.S. (4 Cranch) 48 (1807). The *Willings* Court construed the phrase "when … sold" to designate when a boat owner's duty to register his boat accrues, as opposed to the "precise time" registration

14

> The meaning of § 1226(c) is not plain to us. To be sure, "'when' in § 1226(c) can be read, on one hand, to refer to action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun." *Waffi v. Loiselle*, 527 F. Supp. 2d 480, 488 (E.D.Va. 2007) (citing *The Oxford English Dictionary* 209 (2d ed. 1989); *The American Heritage Dictionary of the English Language* (4th ed. 2000)). On the other hand, "when" can also be read to mean the temporally broader "at or during the time that," "while," or "at any or every time that …." *Free Merriam-Webster Dictionary*, available at http://www.merriamwebster.com/dictionary/when (last visited April 30, 2012). We must therefore consider the BIA's interpretation.

*Hosh*, 680 F.3d at 379-80.

The Fourth Circuit deferred to the BIA's interpretation of the statute in *Rojas* because the interpretation was not " 'arbitrary, capricious, or manifestly contrary to the statute.' " *Hosh*, 680 F.3d at 378 (quoting *Chevron*, 467 U.S. at 844).

Given the dearth of analysis in *Hosh*, Respondents have not persuaded this Court to follow the reasoning or the result of the Fourth Circuit; indeed, its analysis, based upon resorting to dictionary definitions of "when" as opposed to looking to the context of how "when" is used in § 1226(c), is unpersuasive. Neither the BIA nor the Fourth Circuit explains how the words "The Attorney General shall take into custody any alien ... when the alien is released" can be read to state that "The Attorney General shall take into custody any alien ... any time after the alien is released." As discussed in *Saysana* and throughout this Opinion, the context makes it abundantly clear that "when" requires immediacy. Furthermore, the full clause at issue reads "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same

---

must be performed. However, *Willings* itself notes that "the context must decide in which sense ['when'] is used in the law under consideration." *Id.* at 55. As discussed *supra*, the context of § 1226(c) renders the word "when," as used, unambiguous.

15

offense." If the Government's reading of § 1226(c) were correct, the remainder of the phrase could be rendered superfluous. If § 1226(c) empowered the Government to detain aliens months, years, or decades into their release, there would be no reason for the statute to make mention of the conditions of the alien's release that attach immediately upon his release. The more natural reading of the statute is that the Government must take the alien into custody <u>when</u> he is released, regardless of the conditions of that release, if it is to subject the alien to mandatory detention.

      This Court further notes that no District Court (outside the Fourth Circuit) post-*Hosh* has been persuaded to follow the Fourth Circuit's analysis in *Hosh*. *See Cox v. Elwood*, 2012 WL 3757171, at *4 (D.N.J. Aug. 28, 2012) ("This Court is also not persuaded by the Fourth Circuit's decision in *Hosh* to defer to the BIA's interpretation of "when ... released" as it is not binding authority on this Court.... Until the Third Circuit decides this issue, this Court will rely on the plain meaning of § 1226(c)"); *Martial v. Elwood*, 2012 WL 3532324 (D.N.J. Aug. 14, 2012) (same); *Bogarin–Flores v. Napolitano*, 2012 WL 3283287, at *3 (S.D. Cal. Aug. 10, 2012) ("The Fourth Circuit ... found Rojas was decided correctly but did not present any independent reasoning or statutory construction, instead giving deference to the BIA's decision.... This Court finds that the plain language of the statute is not ambiguous and clearly applies the mandatory detention provision to those aliens who are detained upon release from criminal custody"); *Dimanche v. Tay–Taylor*, 2012 WL 3278922 (D.N.J. Aug. 9, 2012); *Munoz v. Tay–Taylor*, 2012 WL 3229153, at *3 (D.N.J. Aug. 6, 2012) ("This Court is also not persuaded by the Fourth Circuit's decision in Hosh to defer to the BIA's interpretation"); *Gonzalez–Ramirez v. Napolitano*, 2012 WL 3133873, at n. 8 (D.N.J. July 30, 2012)

("The Court recognizes the recent decision by the Court of Appeals for the Fourth Circuit .... Absent a directive from the Third Circuit, the Court respectfully declines to adopt the *Hosh* holding and will instead follow the reasoning utilized by the First Circuit in *Saysana*").

This Court agrees with the analysis of the above cases and that employed by this Court regarding a lack of ambiguity in § 1226(c). Thus, "[a]bsent a directive from the Third Circuit… [I] respectfully decline to adopt the *Hosh* holding and will instead follow the reasoning utilized by the First Circuit in *Saysana*." *Gonzalez–Ramirez*, 2012 WL 3133873 at n. 8.

## II. Requiring the Government to Comply With the Clear and Unambiguous Language of § 1226 Does Not Amount to a Coercive Sanction

Respondents argue that even if § 1226(c) requires immediacy, as this Court finds that it does, this Court does not have the power to order coercive sanctions in this case. The Government's argument is wholly misplaced. Contrary to the Government's characterization, the Court is not sanctioning the Government for its failure to detain petitioner immediately. Rather, the Court finds that, in the absence of the immediacy required by § 1226(c), the relevant authority for the Government's detention of Petitioner is § 1226(a), and that the detention is subject to the criteria set forth in that section, including the right to a hearing before an immigration judge to determine if Petitioner can be released on bond pending his challenge to removal. In other words, the Court is not stripping Respondents of their power to act, nor is it ordering that Petitioner be released. Simply put, the Government failed to comply with the unambiguous terms of § 1226(c), and therefore, the Government's detention of Petitioner is not authorized by § 1226(c); instead it falls under the ambit § 1226(a).

17

## CONCLUSION

For the foregoing reasons, the Court holds that Petitioner is not subject to the mandatory detention authorized by § 1226(c) because the Government did not take him into custody immediately. Petitioner's pre-removal detention is instead governed by 8 U.S.C. § 1226(a), which authorizes an Immigration Judge to release him on bond if he is neither a flight risk nor a danger to the community.

This Court grants the Writ of Habeas Corpus and directs that an Immigration Judge provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), to determine if he is a flight risk or danger to the community, within 10 days of the date of the entry of the Order accompanying this Opinion.

March 15, 2013                                              /s/ Freda L.Wolfson
                                                                                                        Freda L. Wolfson, U.S.D.J.