UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHELDON FRANCOIS | : |
| Petitioner | : Civil Action No. 12-2806 (FLW) |
| v. | : **OPINION** |
| JANET NAPOLITANO, et al., | : |
| Respondents | : |

**WOLFSON, United States District Judge:**

Sheldon Francois ("Petitioner" or "Francois") is currently being detained by the Department of Homeland Security, Immigration and Customs Enforcement ("DHS/ICE") at the Bergen County Jail in Hackensack, New Jersey, under 8 U.S.C. § 1226(c). On August 5, 2013, Petitioner filed his Third Amended Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (the "Third Amended Petition" or "TAP"), in which he challenges, *inter alia*, his mandatory detention throughout the duration of his removal proceedings.[1] According to Respondents[2] (hereinafter, "the Government" or

---

[1] The Third Amended Petition also contains claims on behalf of a class consisting of individuals claiming to be subjected to unauthorized and/or unconstitutional mandatory immigration detention under 8 U.S.C. § 1226(c). This Opinion addresses only Francois's individual habeas claim.

[2] Because I decide only Petitioner's individual habeas claim in this Opinion, *see supra* Footnote 1, it appears that for the purposes of this decision, the only proper defendant is Defendant Robert Bigott, Warden of the Bergen County Jail, where Petitioner currently is detained.

1

"Respondents"), this detention is authorized by § 1226(c) and is not unreasonable in length. For the reasons stated below, the Court grants Gayle's request for habeas relief, and directs an Immigration Judge to conduct a bond hearing pursuant to 8 U.S.C. § 1226(a)(2), to determine if Petitioner is a flight risk or danger to the community.

## I. BACKGROUND

Petitioner states that he is a citizen of Trinidad and Tobago and a lawful permanent resident ("LPR") of the United States. TAP, ¶ 9. He has lived in the United States for approximately 20 years, most of the time in New York City. *Id.* at ¶ 33. Petitioner has several misdemeanor convictions. In 2011, Petitioner was convicted of petit larceny under New York State Penal Law § 155.25. He was sentenced to time served of approximated one day. After satisfying all conditions of parole, Petitioner was discharged in May 2001. *Id.* at ¶ 35. Also in 2011, Petition was convicted of criminal possession of a controlled substance in the seventh degree under New York State Penal Law § 220.03, was sentenced to time served of approximately one day, and had his driver license suspended for six months. *Id.* In March 2012, Petitioner was again convicted for petit larceny under the same statute as his 2011 conviction, and ultimately sentenced to 30 days of incarceration. *Id.*

---

The other named defendants in are Janet Napolitano, Secretary of the DHS; Eric Holder, United States Attorney General; John Morton, Director of ICE; Juan Osuna, Director of the Office of Immigration Review; John Tsoukaris, Field Office Director for Enforcement and Removal Operations, Newark Field Office of ICE; Christopher Shanahan, Field Office Director for Enforcement and Removal Operations, New York City Field Office of ICE; Ray Simonse, Acting Field Office Director for Enforcement and Removal Operations, New York City Field Office of ICE; Joseph Trabucco, Director of the Delaney Hall Detention Facility; Orlando Rodriguez, Warden of the Elizabeth Contract Detention Facility; Roy L. Hendricks, Warden of the Essex County Correctional Facility; Oscar Aviles, Director of the Hudson County Correctional Facility; and Brian Elwood, Warden of the Monmouth County Correctional Institution.

On August 6, 2012, ICE officers arrested Petitioner. ICE charged Petitioner with removal on the grounds that his (1) 2011 drug possession conviction, and/or (2) 2011 and 2012 petit larceny convictions each rendered him removable[3], and subject to mandatory detention. *Id.* at ¶ 36. Petitioner did not, and has not, received any hearing to determine if he is properly included within § 1226(c). TAP, ¶ 9, *see In re Joseph*, 22 I. & N. Dec. 790 (BIA 2011). Nor has Petitioner received any individualized bond hearing. TAP, ¶ 9, *see* 8 U.S.C. § 1226(c) (precluding any individual detained under § 1226(c) from obtaining any individualized bond hearing).

Following his arrest by ICE, Petitioner filed an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(a) (the "Application"), seeking a form of discretionary relief from removal available to LPRs who meet certain criteria. TAP, ¶ 37. Both the IJ and the Government have acknowledged that Petitioner is eligible for such discretionary relief. *Id.*

The IJ held two hearings on Petitioner's Application, on March 18, 2013, and July 12, 2013. *Id.*; Dkt. No. 63 at 1 (Letter from Francois regarding IJ determination). At the July 12 hearing, the IJ orally ruled on Petitioner's Application, granting the Application, cancelling Petitioner's removal, and terminating the removal proceedings. TAP, ¶ 41; Dkt. No. 63 at 1; *see also* 8 U.S.C. § 1229b(a). The IJ further indicated that a written decision would be forthcoming, four to six weeks following the oral ruling, after which time the Government would have 30 days to decide whether to appeal the IJ's ruling to the Board of Immigration Appeals (the "BIA"). Dkt. No. 63 at 1. Notwithstanding the

---

[3] Like the applicable statutes and regulations, this Opinion uses the terms "removal" and "deportation" interchangeably to refer to Petitioner's immigration proceedings.

IJ's announcement, Petitioner remains mandatorily detained without any hearing to determine whether Petitioner should be released on bond, and will continue to be so detained through any appeal taken by either party. TAP, ¶ 42; *see* 8 U.S.C. § 1226.

In light of the IJ's announcement that he intends to cancel Petitioner's removal, and given that Petitioner continues to implore this Court to grant Petitioner's claim for habeas relief as expeditiously as possible,[4] the Court issued a Letter Order on July 25, 2013, instructing the parties to address the application of *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011) to Petitioner's individual habeas claim. Specifically, I inquired as to whether the length of Petitioner's mandatory detention without any hearing – approaching 12 months at that point – coupled with the fact that the IJ planned to cancel Petitioner's removal, implicated the concerns raised in *Diop* regarding the constitutionality of prolonged mandatory detention. Following the parties' responses, on August 1, 2013, the Court issued another Letter Order granting Petitioner leave to file a Third Amended Petition to assert an individual habeas claim under *Diop*. *See* Dkt. No. 70. On August 5, 2013, Petitioners did so, and on August 15, 2013, Respondents filed their answer and renewed their motion to dismiss the TAP.[5] The sole issue addressed in this Opinion is Francois's individual habeas claim under *Diop*.

## II. JURISDICTION

Under 28 U.S.C § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless … [h]e is in custody in violation of the Constitution or laws or treaties of the

---

[4] Petitioner, since February 13, 2013, has requested that the Court to consider his request for a hearing immediately.

[5] The Government moved to dismiss both Francois's individual habeas claim and the class-wide claims; as stated earlier, I only address Francois's individual claim in this decision. *See supra* Footnote 1.

United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the Petition under § 2241 because Petitioner was detained within the Court's jurisdiction in the custody of DHS/ICE at the time he filed his petition, *see Spencer v. Kenna*, 523 U.S. 1, 7 (1998), and because Petitioner asserts that his mandatory detention is unreasonable and thus not statutorily authorized by 8 U.S.C § 1226(c) or the Constitution. *See Diop v. ICE/Homeland Security*, 656 F.3d 221.

### III. ANALYSIS

Section 1226 governs the pre-removal detention of an alien. Section 1226(c) commands that, for certain categories of aliens, the Attorney General "shall take into custody any alien … when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."[6] 8 U.S.C. § 1226(c)(1).

---

[6] Section 1226(c)(1) provides in full:

> (c) Detention of criminal aliens
>     (1) Custody
>     The Attorney General shall take into custody any alien who—
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

An alien detained under § 1226(c) must be detained until his removal is final, regardless of whether he is a flight risk or danger to the community, unless the Attorney General determines that the alien should be part of the federal witness protection program, and provided that detention has not become unreasonably prolonged. *See id.*; *Diop v. ICE/Homeland Sec.*, 656 F.3d at 232 ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.").

The Supreme Court has held that mandatory detention under § 1226(c) does not violate the constitutional rights of a removable alien, including an LPR. *Demore v. Kim*, 538 U.S. 510 (2003). In reaching this conclusion, the Supreme Court explained that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Id.* at 523. Nevertheless, the *Demore* court noted that "'[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings,'" *id.*, and that, in general, detention under § 1226(c) is brief, averaging six months. *Id.* at 529-31.

Building off of this reasoning, the Third Circuit in *Diop* addressed a claim that mandatory detention for a prolonged period of time may become unreasonable, and thus unconstitutional. The *Diop* court agreed with the petitioner's claim, and held that, "§

---

> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226.

1226(c) contains an implicit limitation of reasonableness: the statute authorizes only mandatory detention that is reasonable in length." *Diop v. ICE/Homeland Security*, 656 F.3d at 233. The court reasoned that "§ 1226(c) yields to the constitutional requirement that there be a further, individualized, inquiry into whether continued detention is necessary to carry out the statute's purpose" after a certain period of time.[7] *Id.* The Third Circuit, however, rejected any *per se* length of time that would render detention unreasonable; instead, the court explained that the determination of the reasonableness of continued detention "must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case." *Id.* at 234.

In a subsequent decision, the Third Circuit further clarified that: "*Diop* laid out a two step-process: a reviewing court must first determine that a detention has been unreasonably long, and following such a determination, must determine whether the unreasonable detention is necessary to fulfill § 1226's purposes as outlined in *Diop*." *Leslie v. Attorney General*, 678 F.3d 265, 269-70 (3d Cir. 2012). Applying this framework, the *Leslie* court concluded that the petitioner's approximately four years of detention was unreasonable and failed to serve the purposes of § 1226. *Id.* at 270-71. Significantly, the Third Circuit rejected the Government's argument that delays in the proceedings "caused by [the petitioner's] pursuit of bona fide legal challenges to his removal" made the length of petitioner's detention reasonable. *Id.* at 271. According to the *Leslie* court: "To conclude that [the petitioner's] voluntary pursuit of such challenges renders the corresponding increase in time of detention reasonable, would effectively

---

[7] Thus, the *Diop* court concluded that the petitioner's detention of 35 months, without any "hearing inquiry into whether [continued detention] was necessary to accomplish the purposes of § 1226(c), was unreasonable." *Diop*, 656 F.3d at 234.

punish [Leslie] for pursuing applicable legal remedies, and we decline the government's invitation to adopt such a position." *Id.* (citations and internal quotation marks omitted).

Given the Third Circuit's instruction that the determination of what constitutes a "reasonable" period of detention is a "fact-dependent inquiry," *see Diop*, 656 F.3d at 233-34, it is hardly surprising that there is no consensus among courts addressing *Diop* claims as to any specific period of time that is unreasonable in length. Review of these decisions, however, reveals that courts largely have found periods of detention up to one year to be reasonable. *See Ricketts v. Holder*, CIV. 13-0308 WJM, 2013 WL 3087236, at *3 (D.N.J. June 12, 2013) ("Based on the relevant case law . . . it appears as if a period of twelve months or less of pre-removal detention would not necessarily be considered prolonged and unreasonable under *Diop*."); *see also Hernandez v. Sabol*, 823 F. Supp. 2d 266 (M.D. Pa. 2011) (seven months); *Kot v. Elwood*, Civ. No. 12-1720, 2012 WL 1565438, at *3 (D.N.J. May 2, 2012) (nine months); *Bete v. Holder*, Civ. No. 11-6405 (SRC), 2012 WL 1067747, at *8 (D.N.J. Mar. 29, 2012) (twelve months).[8]

In contrast, courts generally have been reluctant to accept the reasonableness of detention exceeding one year. *See, e.g.*, *Gupta v. Sabol*, Civ. No. 1:11-CV-1081, 2011 WL 3897964, at *3 (M.D. Pa. Sept. 6, 2011) (twenty months); *see also Nwozuzu v. Napolitano*, Civ. 12-3963, 2012 WL 3561972, at *3 (D.N.J. Aug. 16, 2012) ("Courts in

---

[8]   It is worth noting, however, that the *Bete* court distinguished the twelve month detention in that case from the detentions in *Diop* and *Leslie* as follows: "Bete is responsible for 21 days of his 12-month detention, since he requested a 21-day continuance of the removal hearing and, unlike *Diop* and *Leslie,* none of the time in excess of the six months found constitutional in *Demore* w*as a result of any appeals in which Bete has prevailed." Bete v. Holder*, 2012 WL 1067747, at *8 (emphasis added). Thus, *Bete* is of questionable relevance to Petitioner's *Diop* claim because, as addressed in more detain *infra*, the length of Petitioner's detention is directly related to his seemingly successful challenge to removal.

this circuit have held that detentions exceeding 20 months are unreasonably long, and have granted petitioners' writs of habeas corpus asserting *Diop* claims on this basis."). *But see Maynard v. Hendrix*, Civ. No. 11-0605 (WJM), 2011 WL 6176202, at *4 (D.N.J. Dec. 12, 2011) (finding eighteen months detention to be reasonable).[9]

Applying *Diop* and *Leslie* to the present case, and cognizant of the relevant decisions of district courts in this circuit, I conclude that, *under the circumstances of this case*, Francois's continued detention under § 1226(c) is unreasonable. At the time of this Opinion, Francois will have been held in mandatory detention, without any bond hearing, for more than one year. This length of time already well exceeds the presumptively reasonable six-month period of detention referenced by the Supreme Court in *Demore* and identified by the Third Circuit in *Diop*.

The Government, however, contends that Francois's detention remains justified because Francois's "removal proceedings have been adjourned five times to allow him the opportunity to seek relief from removal," and relies on other district court decisions finding detention of twelve months to be reasonable, particularly where the petitioner requested numerous continuances. *See* Dkt. No. 67 at 3 (Gov't letter response) (citing *Espinoza-Loor v. Holder*, Civ. No. 11-6993 (FSH), 2012 WL 2951642, at *7 (D.N.J. July 2, 2012), and *Maynard v. Hendrix*, Civ. No. 11-0605 (WJM), 2011 WL 6176202, at *4

---

[9] The *Maynard* court rejected the petitioner's *Diop* claim because the petitioner requested several unknown continuances in his removal proceedings, causing the delay. *Maynard v. Hendrix*, 2011 WL 6176202, at *4 ("Petitioner has provided this Court with no explanation of the reasons for the repeated requests for continuances. Petitioner cannot repeatedly request continuances and then complain that the resultant prolonged detention is unconstitutionally unreasonable."). The *Maynard* court accordingly was unable to determine on this incomplete record whether, like in *Diop*, "the proceedings had been prolonged also because of numerous errors by the immigration judge, necessitating appeals, combined with the government's failure timely to secure evidence that bore directly on the issue of whether the petitioner was properly detained." *Id.* at *3.

(D.N.J. Dec. 12, 2011)); *see also* Dkt. No 67-1 (Cert. of ICE Deportation Officer Yolanda Harris) at ¶¶ 7-8, 10, 12-15; Dkt. No. 75-1 at 38 (Gov't Answer to TAP). The Government's position is not persuasive under the circumstances of this case.

With respect to the numerous adjournments, Petitioner alleges, and the Government has certified, the following. The IJ first continued Francois's proceedings when Francois appeared *pro se* at his first hearing in late August 2012, in order for Francois to obtain legal representation. TAP, ¶ 40, Dkt. No 67-1 (Cert. of ICE Deportation Officer Yolanda Harris) at ¶ 7. Slightly more than one month later, in early October 2012, Francois and his recently retained counsel appeared before the IJ and requested a continuance to prepare and file applications for relief from removal. Dkt. No 67-1 at ¶ 8. The IJ granted a continuance until December 2012, with Francois's Application filed in advance of that continued hearing date. *Id.* at ¶ 8-9. At the December 2012 hearing, Francois admitted in part his removability but also signed and swore to his Application for cancellation of removal. *Id.* at ¶ 10. The Government requested an expedited hearing schedule at that time, but the IJ continued the hearing for a month to allow Francois to file supporting documents to his Application. *Id.* The IJ subsequently continued the January hearing to allow counsel for Francois to gather additional evidence in support of Francois's Application. *Id.* at ¶ 12. On March 18, 2013, the IJ held a hearing on the merits of Francois's Application, and then continued the proceeding until May 30, 2013 for additional evidence. *Id.* at ¶ 13; TAP, ¶ 39. Prior to the May 30 hearing, Francois filed an adjournment request, and the hearing was rescheduled to July 12,

2013.[10] Dkt. No 67-1 at ¶ 14. Finally, the IJ held the most recent scheduled hearing on July 12, taking testimony, closing the record, and orally indicating that he would grant Francois's Application. *Id.* at ¶ 16; *see also* TAP, ¶¶ 38-40.

As the foregoing indicates, every continuance but one arose from Francois's attempt to secure informed counsel and to pursue his Application or from the IJ's own scheduling issues. Indeed, the record reveals that Francois and his counsel have been prompt and diligent in pursuing a bona fide claim challenging Petitioner's removal – a claim that appears likely to be granted. The Third Circuit has made clear that continuances related to a petitioner's attempts to secure counsel and to pursue bona fide challenges to removal should not count against the reasonableness of the length of that petitioner's detention. *Leslie v. Attorney Gen.*, 678 F.3d at 271. Thus, I reject the Government's contention that twelve months of detention is reasonable simply because the delays are attributable to Francois's (seemingly successful) application to the IJ for cancellation of removal.[11]

Furthermore, the Government's reliance on other decisions concluding that twelve months or more of mandatory detention is not unreasonable is not a valid basis for concluding that Francois's similar length of detention *in this case* is also not

---

[10] Although not set forth in the Government's certification, Francois alleges that the adjournment was necessary because of a scheduling conflict of his attorney. *See* TAP, ¶ 40.

[11] For the same reason, I disagree with the Government's interpretation of *Espinoza-Loor v. Holder*, No. 11-6993, 2012 WL 2951642, at *7 (D.N.J. July 2, 2012), as establishing a blanket rule that any and all continuances sought by a detainee support the reasonableness of continued detention.

unreasonable.[12] *Diop* instructs that the reasonableness determination "will necessarily be a fact-dependent inquiry that will vary depending on individual circumstances," which "must take into account a given individual detainee's need for more or less time, as well as the exigencies of a particular case." *Diop*, 656 F.3d at 233-34; *id.* at 233 (explaining that there is no "universal point at which detention will always be considered unreasonable").

Further supporting the conclusion that Petitioner's mandatory detention has become unreasonable is the IJ announcement last month that he intends to grant Petitioner's Application for cancellation of removal. In other words, the IJ has determined that Petitioner is not the type of alien who should be removed, even in light of Petitioner's criminal history. Given the IJ's decision, the Court is unwilling to accept the Government's position that Petitioner's continued mandatory detention is reasonable. With the IJ's conclusion that Petitioner is not so dangerous as to require removal, it is unclear how his continued mandatory detention for that same reason is reasonable. *See*

---

[12] Indeed, the Government concedes that the reasonableness determination is a "fact-dependent" inquiry specific to the circumstances of each case. See Dkt. No. 75-1 at 37-38 (Gov't Answer to TAP).

Moreover, those cases cited by the Government in its letter brief, Dkt. No. 67, are easily distinguished from the present one. *See supra*, Footnote 8 (discussing inapplicability of *Bete v. Holder*). For example, in *Maynard*, the court concluded that eighteen months of detention was not unreasonable because it was largely the result of continuances that the petitioner had received for unknown reasons. *See Maynard v. Hendrix*, 2011 WL 6176202, at *4. Thus, the *Maynard* court grounded its decision on the fact that it did not know why the petitioner in that case had requested so many continuances leading to delays in the proceeding and his lengthy detention. In other words, the court had no basis to conclude that the continuances arose from "bona fide challenges" to removal. At most, then, *Maynard* simply stands for the proposition that the petitioner must first meet his burden of showing why his detention has been unreasonably prolonged – not that 18 months of mandatory detention is reasonable. More importantly, *Maynard* was decided prior to the Third Circuit's decision in *Leslie* that delays arising from a petitioner's good faith challenges to removal should not be used to justified prolonged detention.

*Diop*, 656 F.3d at 231 (noting that, in enacting § 1226(c), "Congress was concerned with the immigration authorities' 'wholesale failure' to 'deal with the increasing rates of criminal activity by aliens.' § 1226(c) was intended to remedy this perceived problem by ensuring that aliens convicted of certain crimes would be present in their removal proceedings and not on the loose in their communities, *where they might pose a danger*." (Emphasis added.)).[13]

In sum, the length of Petitioner's detention, now exceeding one year, coupled with the unique circumstances of this case – particularly the IJ's indication that he intends to cancel Petitioner's removal – lead to the conclusion that Petitioner's mandatory

---

[13] The Government seeks to minimize the importance of the IJ's intention to cancel Petitioner's removal by explaining that (1) the IJ has not issued a final decision cancelling Petitioner's removal, and (2) based on the alleged contents of a conversation between Francois and another detainee during transport that was overheard by an Immigration Enforcement Agent, the Government has filed a motion to reopen Francois's case that is still pending before the IJ. As to the latter, the Government contends that during the overheard conversation, Francois admitted he had not been truthful in his testimony before the IJ in regards to his Application. *See* Dkt. No. 75-1 (Gov't Response to TAP) at 36-37; *see also* Dkt. No 67-1 (Cert. of ICE Deportation Officer Yolanda Harris) at ¶¶ 17-18.

I find that neither of these circumstances affects the reasonableness of Petitioner's continued detention. Indeed, if anything, that the IJ has yet to issue a written decision and that the Government has prolonged Petitioner's proceedings by filing a motion to reopen further demonstrates that Petitioner will be subject to mandatory detention for even more time. Moreover, regardless of IJ's ultimate decision on the motion to reopen or Petitioner's Application, it appears that the losing party will appeal, during which time Petitioner will remain detained even if he prevailed before the IJ. This Court, like several other courts presented with the same issue, considers the prolonged likelihood of future detention as relevant to whether Petitioner's continued detention is reasonable. *E.g.*, *Alli v. Decker*, 644 F. Supp. 2d 535, 544 (M.D. Pa. 2009) ("[W]here it can be foreseen that proceedings will continue for a prolonged period of time, continued detention may be less likely to be reasonable."), *rev'd in part, vacated in part, on other grounds*, 650 F.3d 1007 (3d Cir. 2011). In this case, the likelihood of Petitioner facing prolonged additional detention militates against finding that his detention, now already exceeding one year, is reasonable. Finally, I note that my decision today to grant Petitioner a bond hearing will not unduly prejudice the Government's motion to reopen, as the Government will certainly have an opportunity to raise its concerns of Petitioner's truthfulness at that hearing in connection with his risk of flight or danger to the community.

detention under § 1226(c) is no longer reasonable. *Diop*, 656 F.3d at 233-34. The IJ is therefore directed to provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2), to determine if he is a flight risk or danger to the community that would necessitate his continued mandatory detention; at this hearing, the Government will bear the burden of establishing why continued detention is necessary. *Diop*, 656 F.3d at 235 ("[T]he Government must justify its continued authority to detain [Petitioner] at a hearing at which it bears the burden of proof."); *see also supra* Footnote13.

**CONCLUSION**

For the foregoing reasons, the Court holds that Petitioner's continued mandatory detention, pursuant to 8 U.S.C. § 1226(c), is no longer reasonable under the circumstances of this case. Accordingly, the Court grants the Writ of Habeas Corpus and directs that an Immigration Judge provide Petitioner with an individualized bond hearing to determine with an "whether detention is still necessary to fulfill the statute's [§ 1226(c)] purposes," *Leslie v. Attorney Gen.*, 678 F.3d at 270-71 (internal quotation marks omitted), within 10 days of the date of the entry of the Order accompanying this Opinion.

August 23, 2013  /s/ Freda L.Wolfson
Freda L. Wolfson, U.S.D.J.