**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____ :
                                :
GARFIELD O. GAYLE, *et al.*     :
                                :
                    Plaintiffs  :       Civil Action No. 12-2806 (FLW)
                                :
      v.                        :
                                :       **OPINION**
                                :
JEH JOHNSON,[1] *et al.*,        :
                                :
                    Defendants. :
                                :
_____ :


**WOLFSON, United States District Judge:**

On August 5, 2013, putative class representatives Garfield O. Gayle ("Gayle"),

Neville Sukhu ("Sukhu"), and Sheldon Francois ("Francois") (collectively, "Plaintiffs" or

"Named Plaintiffs") filed their third amended class-action complaint ("TAC") against

various federal and state government defendants[2] (collectively, the "Government"),

---

[1]    At the time the third amended class-action complaint was filed, Janet Napolitano
was Secretary of the DHS, but pursuant to Fed. R. Civ. P. 25(d), current Secretary of the
Department of Homeland Security ("DHS") Jeh Johnson has been substituted.

[2]    The defendants are Jeh Johnson, Secretary of the DHS; Eric Holder, United States
Attorney General; John Morton, Director of ICE; Juan Osuna, Director of the Office of
Immigration Review; John Tsoukaris, Field Office Director for Enforcement and
Removal Operations, Newark Field Office of ICE; Christopher Shanahan, Field Office
Director for Enforcement and Removal Operations, New York City Field Office of ICE;
Ray Simonse, Acting Field Office Director for Enforcement and Removal Operations,
New York City Field Office of ICE; Joseph Trabucco, Director of the Delaney Hall
Detention Facility; Orlando Rodriguez, Warden of the Elizabeth Contract Detention
Facility; Roy L. Hendricks, Warden of the Essex County Correctional Facility; Oscar
Aviles, Director of the Hudson County Correctional Facility; Robert Bigott, Warden of

alleging violations of the Immigration and Naturalization Act ("INA") and the due process clause of the United States Constitution.  Specifically, Plaintiffs claim that they and other similarly situated individuals in the District of New Jersey have been subjected to unauthorized and/or unconstitutional mandatory immigration detention—*i.e.*, detention without any bond hearing to determine their dangerousness or risk of flight—under 8 U.S.C. § 1226(c), by the Department of Homeland Security, Immigration and Customs Enforcement ("DHS"/"ICE").[3]

Plaintiffs' challenge to the Government's application of § 1226(c) is two-fold. First, Plaintiffs contend that serious constitutional issues arise from the Government's decision to provide an opportunity to challenge mandatory detention status to only those aliens who argue that they are not "properly included" under § 1226(c).  In that connection, Plaintiffs argue that the Court should interpret the statutory language "is deportable" in § 1226(c) to cover all aliens who have a "substantial challenge" to deportability, either because they are attacking their specified § 1226(c) detention charges, as is already contemplated by *In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999), or because they are requesting discretionary relief from removal.  Second, Plaintiffs contend that the standards and burdens applied in the *Joseph* hearing—the hearing provided to aliens challenging whether they are "properly included" in the mandatory detention statute—are constitutionally inadequate and violate their due process rights.  Plaintiffs

---

the Bergen County Jail; and Brian Elwood, Warden of the Monmouth County Correctional Institution.

[3]     The TAC also contains an individual habeas claim for Francois.  The Court disposed of this claim in an Opinion and Order dated August 23, 2013.  *See* Dkt. Nos. 80 & 81.  This Opinion addresses only Plaintiffs' remaining class-wide claims.

claim that the *Joseph* hearing standard unconstitutionally places a near-insurmountable burden on the alien to show why he or she is not properly included under § 1226(c), whereas the other burdens in removal proceedings—including the ultimate burden to demonstrate that removal is appropriate—rest with the Government.  Similarly, Plaintiffs argue that certain other procedures used by the Government in enforcing § 1226(c) raise due process concerns, particularly, the adequacy of the notice of a *Joseph* hearing and the lack of a contemporaneous record of the hearing.  To be sure, Plaintiffs do not challenge the constitutionality of mandatory detention in removal proceedings under § 1226(c) *per se*, which the Supreme Court found constitutional in *Demore v. Kim*, 538 U.S. 510 (2003); rather, Plaintiffs dispute their access to, and the adequacy of, the procedural safeguards associated with mandatory detention, a question not yet addressed by the Supreme Court or the Third Circuit.  Based on these alleged statutory and constitutional violations, Plaintiffs seek declaratory and injunctive relief against the Government (i) permitting all aliens with substantial challenges to removal, whether based upon the merits of the Government's charges or discretionary relief, to seek a hearing to determine the appropriateness of their mandatory detention status, and (ii) requiring the Government to implement adequate procedures in carrying out mandatory detention proceedings.

Plaintiffs have filed several amended pleadings raising both individual habeas claims on behalf of Named Plaintiffs, and claims for declaratory and injunctive relief on behalf of a putative class of aliens similarly situated to Plaintiffs.  As explained *infra*, Named Plaintiffs' individual claims for a bond hearing are moot.  The only claims in the TAC currently pending and subject to the Government's most recent motion to dismiss are the class-claims in the first cause of action for violation of the due process clause of

the Fifth Amendment and the second cause of action for violation of the INA.  For the reasons that follow, the Court grants in part and denies in part the Government's motion to dismiss.  Specifically, the Government's motion to dismiss Plaintiffs' claims for declaratory and injunctive relief in Counts One and Two of the TAC is granted to the extent that Plaintiffs are seeking to mandate a *Joseph* hearing for any mandatorily detained alien under § 1226(c) who has a "substantial challenge" to his or her removal based upon discretionary relief only.  For that reason, Plaintiff Francois is dismissed for lack of standing.  The Government's motion to dismiss is denied with respect to Gayle's and Sukhu's challenges to the constitutional and statutory adequacy of the *Joseph* hearing and its related procedures.

## I.    BACKGROUND

Named Plaintiffs are each aliens with lawful permanent resident ("LPR") status.  TAC, ¶¶ 8-10.[4]  Based on previous criminal convictions, Plaintiffs were charged by ICE as removable[5] under the INA.  *Id.*  Due to the nature of the convictions upon which ICE

---

[4]    For the purposes of this motion to dismiss, the following facts are drawn from Plaintiffs' TAC and supporting documents that are integral to the TAC, *see In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), and are assumed to be true.

[5]    Like the applicable statutes and regulations, as well as the parties' papers, this Opinion uses the terms "removal" and "deportation" interchangeably to refer to Plaintiffs' immigration proceedings.  *See generally* 5 CHARLES GORDON, STANLEY MAILMAN, STEPHEN YALE-LOEHR, & RONALD Y. WADA, IMMIGRATION LAW AND PROCEDURE § 64.01[1] (rev. ed. 2012) ("For cases starting on or after April 1, 1997, there is a single removal proceeding, rather than separate "exclusion" and "deportation" proceedings, as provided under prior law.").  Although Plaintiffs also frame their arguments in terms of "inadmissibility" proceedings, Plaintiffs' removal proceedings are based only deportation, not inadmissibility; thus, I do not address this aspect of Plaintiffs' argument.

based Plaintiffs' removal, Plaintiffs were also arrested by ICE and mandatorily detained pending the completion of their removal proceedings pursuant to § 1226(c).  *Id.*

Plaintiff Garfield Gayle is a Jamaican national and LPR of the United States, who has lived in the United States for approximately 30 years, most of the time in New York City.  *Id.* at ¶ 24.  In 1995, Gayle was convicted of criminal possession of a controlled substance with the intent to sell in the third degree under New York State Penal Law § 220.16.  He served approximately two years of jail time and was released on parole in June 1997.  *Id.* at ¶ 26.  On March 24, 2012, a team of ICE officers took Gayle from his home in Brooklyn and placed him in their custody.  *Id.* at ¶¶ 27, 30.  ICE charged Gayle with removal on the grounds that his 1995 conviction rendered him deportable, and also found him subject to mandatory detention based on a March 2007 misdemeanor controlled substance offense.  *Id.* at ¶ 28.

While Gayle was detained and his removal proceedings were ongoing, he filed a habeas petition in this Court asserting that DHS lacked the statutory authority to detain him under 8 U.S.C. § 1226(c), because the statute requires DHS to take an alien into custody immediately upon release from his conviction.  *See* Dkt. Nos. 1; 12.  In that regard, Gayle argued that because DHS failed to take him into custody immediately upon his release in 2007, he could not be subject to mandatory detention, and was instead entitled to a bond hearing before an Immigration Judge.  This Court agreed with Gayle and ordered the Immigration Judge to provide Gayle with a bond hearing.  *See* Dkt. No. 34 (Order granting Gayle's habeas petition); *see also Gayle v. Napolitano*, Civ. No. 12-2806(FLW)(DEA), 2013 WL 1090993 (D.N.J. Mar. 15, 2013).  Gayle was released on

bond on March 25, 2013, and the Government has not appealed this Court's March 15, 2013 order.[6]

Plaintiff Neville Sukhu is a Guyanese national and LPR of the United States, who has lived in the United States for approximately 20 years, almost entirely in New York City.  TAC, ¶ 45.  In 1997, Sukhu pleaded guilty to assault in the second degree under New York State Penal Law § 120.05(6).  He served approximately 90 days of jail time and was discharged from parole in September 2002.  *Id.* at ¶ 46.  In or around May 2011, Sukhu pleaded guilty to a charge of disorderly conduct.  *Id.* at ¶ 47.  On August 15, 2012, a team of ICE officers took Sukhu into custody upon Sukhu's release from the disorderly conduct conviction.  *Id.*  ICE charged Sukhu with removal on the grounds that his 1997 assault conviction was a crime involving moral turpitude that rendered him deportable, and also that the combination of his 1997 conviction and a 2011 conviction for turnstile jumping, under New York State Penal Law § 165.15, rendered him deportable.  *Id.*  ICE also found Sukhu subject to mandatory detention under § 1226(c) based on his 1997 assault conviction.  *Id.*

During his removal proceedings, Sukhu filed an individual habeas claim in this Court premised on the Third Circuit's holding in *Diop v. ICE/Homeland Security*, 656 F.3d 221 (3d Cir. 2011), which requires the Government to provide a mandatorily detained alien with a bond hearing when the alien's detention exceeds a reasonable

---

[6]      A subsequent decision by the Third Circuit in another case rejected the argument that § 1226(c) only allows for mandatory detention if DHS takes the alien into custody immediately upon release.  *See Sylvain v. Attorney Gen. of the United States*, 714 F.3d 150 (3d Cir. 2013).  However, as noted above, the Government did not appeal my decision with respect to Gayle, and has not appeared to otherwise challenge his release on bond by the Immigration Judge.

period of time.  *See* Dkt. No. 12, ¶¶ 77-83.  Also, as part of his removal proceedings, Sukhu filed a motion to terminate removal on the basis that his 1997 conviction did not constitute a crime involving moral turpitude, which motion was denied by the Immigration Judge.  *Id.* at ¶ 48.  Sukhu additionally filed an application with the Immigration Judge for discretionary relief in the form of adjustment of status.  *Id.* at ¶ 49. On April 30, 2013, the Immigration Judge granted Sukhu's application for adjustment of status and terminated his removal proceedings, *see* Dkt. No. 47-1, Ex. A, and on May 8, 2013, Sukhu was released from DHS custody.  *See* Dkt. No. 48, 1.  The Government has not appealed the Immigration Judge's decision.

Plaintiff Sheldon Francois is a citizen of Trinidad and Tobago and a LPR of the United States, who has lived in the United States for approximately 20 years, most of the time in New York City.  TAC, ¶ 33.  In 2011, Francois was convicted of petit larceny under New York State Penal Law § 155.25.  He was sentenced to time served of approximately one day, and discharged from parole in May 2011.  *Id.* at ¶ 35.  Also in 2011, Francois was convicted of criminal possession of a controlled substance in the seventh degree under New York State Penal Law § 220.03, and was sentenced to time served of approximately one day.  *Id.*  In March 2012, Francois was again convicted of petit larceny under the same statute as his 2011 conviction, and ultimately sentenced to 30 days of incarceration.  *Id.*  On August 6, 2012, ICE officers took Francois into their custody and charged him as removable and subject to mandatory detention under § 1226(c) based on his (i) 2011 drug possession conviction, and/or (ii) 2011 and 2012 petit larceny convictions.  *Id.* at ¶ 36.

7

Francois filed an individual habeas action in this Court, claiming that he had a substantial challenge to his deportability and thus should be entitled to a hearing to challenge whether he was subject to the mandatory detention statute.  *See* Dkt. No. 51, ¶¶ 79-81.[7]  Francois did not file any motion to terminate in his immigration proceedings; he did, however, file an application for discretionary relief in the form of cancellation of removal pursuant to 8 U.S.C. § 1229b(a).[8]  *Id.* at ¶ 37.  At a hearing on July 12, 2013, the Immigration Judge orally granted Francois' application, thereby cancelling his removal and terminating the removal proceedings pending a forthcoming written decision in four to six weeks.  *Id.* at ¶ 41; *see also* Dkt. No. 63 at 1.  Notwithstanding the Immigration Judge's pronouncement, Francois remained mandatorily detained, without any hearing to determine whether he should be released on bond, and would continue to be so detained through the duration of an appeal taken by either party.  TAC, ¶ 42; *see* 8 U.S.C. § 1226.  In a decision dated August 23, 2013, this Court granted Francois' individual habeas claim for relief under the reasoning of *Diop v. ICE/Homeland Security*, 656 F.3d 221, and

---

[7]     Plaintiffs' Amended Complaint, although naming and including facts relating to Francois, did not include a cause of action for Francois individually.  Plaintiffs informed the Court, however, that they had also intended to include an individual habeas claim for Francois.  The Government did not oppose allowing Plaintiffs to amend their claims to include Francois' individual claim, which resulted in the Second Amended Habeas Petition and Class Action Complaint.  *See* Dkt. No. 51.

[8]     The INA provides that an Immigration Judge may cancel removal for a deportable LPR who has (1) held LPR status for at least five years, (2) resided in the United States continuously for seven years after having been admitted in any status; and (3) has not been convicted of an aggravated felony at any time.  5 GORDON, *ET AL.*, *supra* Footnote 5, § 64.04[2][b] (citing INA § 240A(a)(1)-(3), 8 U.S.C. § 1229b(a)(1)-(3)).

ordered the Immigration Judge to provide Francois with a bond hearing.[9]  *See* Dkt. No.

81; *see also Francois v. Napolitano*, Civ. No. 12-2806(FLW)(DEA), 2013 WL 4510004

(D.N.J. Aug. 23, 2013).  On August 30, 2013, Francois was released on bond, and, on

September 26, 2013, the Immigration Judge issued his written decision granting

Francois' application for cancellation of removal.

Accordingly, all that remains in the TAC are two claims for declaratory judgment

and injunctive relief on behalf of Named Plaintiffs as putative class representatives based

on violations of (1) the Due Process Clause of the Fifth Amendment, and (2) the INA.[10]

The Government's pending motion to dismiss under Fed. R. Civ. P. 12(b)(6) seeks the

dismissal of both of these claims.

## II.    STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be

entitled to relief."  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)

---

[9]     Following additional submissions from the parties relating to the relevance of the
Third Circuit's decision in *Diop v. ICE/Homeland Security*, 656 F.3d 221, the Court
granted Plaintiffs leave to file the instant TAC and to include a claim for Francois under
*Diop*.

[10]    At the request of the parties, on May 10, 2013, the Court held oral argument on
Plaintiffs' declaratory and injunctive claims and on a motion to certify the class.  At the
end of the argument, the Court (1) dismissed Gayle and Sukhu's individual habeas claims
as moot, (2) denied the Government's motion to dismiss based in part on the preliminary
finding that Plaintiffs had alleged sufficient facts with respect to Francois to support
Plaintiffs' declaratory and injunctive challenges, (3) denied without prejudice Plaintiffs'
motion to certify the class pending additional discovery on that issue, and (4) granted
Plaintiffs leave to file a Second Amended Petition/Class Action Complaint and
supplemental briefing on Francois's individual habeas claim. *See* Dkt. No. 50; *see
generally* Transcript of Oral Argument, May 20, 2013.  No written decision was issued.

(citation and quotations omitted).   In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the Rule 12(b)(6) standard, holding that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  *Id.* at 555.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.*

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief."  *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).  That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions."  *Id.* (citations and quotations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. . . . The pleading standard is not akin to a probability requirement . . . . [T]o survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (Citations and internal quotation marks omitted.)).

## III.   ANALYSIS

Plaintiffs' claims arise out of the Government's application of the mandatory detention scheme set forth in 8 U.S.C. § 1226(c).[11]  This is not the first judicial challenge to this statute or mandatory detention generally in the immigration context, and thus,

---

[11]     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. §§ 2201-2202 (declaratory relief).

before setting forth the particulars of Plaintiffs' claims, I begin with the legislative background surrounding the enactment of § 1226(c) and the relevant controlling precedent dealing with the constitutionality of mandatory detention of LPRs during immigration removal proceedings. I note further that although the Government has raised a standing challenge, thereby implicating this Court's subject matter jurisdiction, I delay my resolution of this issue until later in this Opinion because the question of whether Plaintiffs have standing is dependent on the initial determination of which aliens may properly challenge their mandatory detention status.[12]

### A.    Section 1226(c)

Section 1226 governs the pre-removal detention of an alien, and directs that, for certain categories of aliens, the Attorney General "shall take into custody any alien . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense."[13]  8 U.S.C. § 1226(c)(1).

---

[12]    I further note that the resolution of Named Plaintiffs' individual claims does not necessarily prevent them from bringing their class-wide claims as putative class representatives because they had viable claims at the time their initial class action motion was filed. *Wilkerson v. Bowen*, 828 F.2d 117 (3d Cir. 1987) (no automatic disqualification for putative class representative whose individual claim was mooted after motion was filed but before the motion was decided). Because the Government has not meaningfully raised such a challenge in its most recent motion to dismiss, I find no need to address the appropriateness of Named Plaintiffs as putative class representatives at this juncture apart from whether they have standing to bring their constitutional and statutory claims.

[13]    Section 1226(c)(1) provides in full:

The Attorney General shall take into custody any alien who—
   (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

Section 1226(c) finds its origin in the comprehensive overhaul of the INA that occurred in the 1980s and 1990s, and represents one of the significant changes to the INA's detention provisions established by the Antiterrorism and Effective Death Penalty Act ("AEDPA") and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").  As the Supreme Court explained in *Demore v. Kim*, 538 U.S. 510 (2003), the importance of which will be discussed in more detail *infra*, Congress was dissatisfied with the Immigration and Naturalization Service's ("INS") apparent failure to remove deportable criminal aliens.[14]  *Id.* at 518-21; *see also id.* at 519 (citing Senate report finding that "more than 20% of deportable criminal aliens failed to appear for their

---

> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c).

[14]      INS is the predecessor to DHS/ICE.  *Khouzam v. Attorney Gen. of United States*, 549 F.3d 235, 243 n.7 (3d Cir. 2008) ("The Homeland Security Act of 2002 . . . eliminated the Immigration and Naturalization Service ('INS') and assigned INS's enforcement functions to the DHS's Bureau of [ICE] . . . .").  As part of the Homeland Security Act of 2002, the functions of the INS were transferred from the Department of Justice to three different agencies under the newly formed DHS: ICE, Customs and Border Protection, and Citizenship and Immigration Services, with ICE assuming the majority of the INS's immigration enforcement function.  *Lin-Zheng v. Attorney. Gen.*, 557 F.3d 147, 152 n.4 (3d Cir. 2009) (citing Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135).

removal hearings").[15]  As part of a wholesale reform to the immigration laws, Congress enacted § 1226, which "requir[es] the Attorney General to detain a subset of deportable criminal aliens pending a determination of their removability."  *Id.* at 521.  In particular, § 1226(c) provides for mandatory detention pending removal proceedings for any alien who has committed certain categories of crimes.[16]  Significantly, an alien mandatorily detained under § 1226(c) has no right to a bond hearing to seek release from detention by showing that the alien is not a flight risk or danger to the community; similarly, neither the DHS/ICE nor the Immigration Judge has the discretion to release an alien detained under § 1226(c) pending the final resolution of the alien's removal proceedings, provided that detention has not become unreasonably prolonged.[17]  *See* 8 U.S.C. § 1226(c); *Diop v. ICE/Homeland Sec.*, 656 F.3d at 230, 232 ("At a certain point, continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into

---

[15]     As explained *infra* in this Opinion, there is some question as to the accuracy of this data.

[16]     Specifically, § 1226(c) applies to aliens who are deportable on account of: having been convicted of two or more crimes involving moral turpitude, an aggravated felony, a controlled substance offense, certain firearm-related offenses, or certain other miscellaneous crimes; or having committed a crime of moral turpitude within a certain amount of time since their date of admission for which a sentence of one year or longer has been imposed; and finally, aliens who are inadmissible or deportable because of connections to terrorism.  *See* 8 U.S.C. § 1226(c) (referencing *id.*, §§ 1182(a)(2), 1227(a)(2)(A)(ii), 1227(a)(2)(A)(iii), 1227(a)(2)(B), 1227(a)(2)(C), 1227(a)(2)(D), 1227(a)(2)(A)(i), 1182(a)(3)(B), 1227(a)(4)(B)).

[17]     The sole statutory exception to mandatory detention is if the Attorney General determines that the alien should be part of the federal witness protection program.  *Id.*, § 1226(c).

whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community.").

In *Demore v. Kim*, 538 U.S. 510, the Supreme Court reviewed a challenge brought under the due process clause to the constitutionality of mandatory detention under § 1226(c). A majority of the Supreme Court held that "[d]etention during removal proceedings is a constitutionally permissible part of that process" and thus, the "detention of . . . a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings" does not violate the alien's constitutional rights. *Id.* at 531.

### B.    Mandatory Detention Procedures and *In re Joseph*

In *In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999), the Board of Immigration Appeals ("BIA") was presented with a challenge to the procedures used by the Government in mandatorily detaining aliens under § 1226(c). In *Joseph*, the INS initiated removal proceedings against the respondent Joseph, an alien LPR from Haiti, on the basis that the INS had "reason to believe" that Joseph was deportable for having been convicted of an aggravated felony, and thus also subject to mandatory detention under § 1226(c).[18] *Id.* at 801. The Immigration Judge ultimately determined that Joseph was not an aggravated felon and, based on that determination, issued an order releasing Joseph from custody. *Id.* The INS appealed both the Immigration Judge's decision on the merits and the release on bond, but the BIA in *Joseph* only addressed the issue of whether the Immigration Judge properly released Joseph. *Id.* On appeal, the INS argued that under

---

[18]     DHS/ICE initiates removal proceedings by filing a "notice to appear," Form I-286, with the immigration court, which document normally includes the time and place of the hearing; internal policy instructs that the notice must be served on the alien within 24 hours if the alien will be detained in custody. *See generally* 5 GORDON, *ET AL.*, *supra* Footnote 5, § 64.02[1].

the mandatory detention statute and corresponding regulation, the Immigration Judge "lacked jurisdiction to redetermine the custody conditions imposed by the [INS]." *Id.* In that connection, the INS claimed that, notwithstanding the Immigration Judge's decision on the merits, Joseph "remain[ed] ineligible for release [from mandatory detention pending appeal] because his conviction record [still] provided the requisite 'reason to believe' that he is removable as an aggravated felon." *Id.* at 802 (citing *Matter of Joseph*, Interim Decision 3387, at 10 (BIA 1999)).

The BIA, rejecting the INS's argument, began by addressing the regulation governing mandatory detention: 8 C.F.R. § 1003.19.[19] Specifically, the BIA focused on one provision of the regulation that permits, in limited circumstances, a mandatorily detained alien to "seek a determination from the [Immigration Judge] 'that the alien is not properly included' within certain of the regulatory provisions that would deprive the [Immigration Judge] of bond jurisdiction" under § 1226(c). *In re Joseph*, 22 I. & N. Dec.

---

[19]    In *Joseph*, the relevant CFR provision was found at 8 C.F.R. § 3.19(h)(2). As part of the Homeland Security Act of 2002, *see supra*, Footnote 14, the provision was renumbered as 8 C.F.R. § 1003.19. I refer only to the current numbering in this Opinion in the interest of consistency.

   Section 1003.19(h) further provides, in relevant part:

   (2)(i) . . . [A]n immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens:
   . . .
       (D) Aliens in removal proceedings subject to section 236(c)(1) of the Act [8 U.S.C. § 1226(c)(1)]
   . . .
   (ii) . . . [W]ith respect to paragraphs (h)(2)(i)(C), (D), and (E) of this section, nothing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within any of those paragraphs.

8 U.S.C. § 1003.19(h) (2013).

at 802 (quoting 8 C.F.R. § 3.19(h)(2)(ii) (1999)).  Contrary to the INS's claim that the Immigration Judge lacked jurisdiction to reconsider the INS's initial custody determination, the BIA explained that although the alien's "conviction record provided the [INS] with the requisite 'reason to believe' . . . for the purposes of making the *initial* custody determination . . . the [INS's] decision . . . is not unreviewable by the [Immigration Judge] or the [BIA] in either the bond or removal context."  *Id.* at 804. (emphasis added).  According to the BIA, the INS's contrary position failed to allow for any review of the INS's determination, which was clearly at odds with the regulations. *See id.* (citing Procedures for the Detention and Release of Criminal Aliens by the Immigration and Naturalization Service and for Custody Redeterminations by the Executive Office for Immigration Review, 63 Fed. Reg. 27,441, 27,447 (1998)).

The BIA explained that the very purpose of Section 1003.19(h)(2)(ii) "is to provide an alien . . . with the opportunity to offer evidence and legal authority on the question of whether the [INS] has properly included him within a category that is subject to mandatory detention."  *Id.* at 805.  Nevertheless, the BIA acknowledged that the regulations did not provide the Immigration Judge with much guidance in determining whether an alien is "properly included" in the mandatory detention statute.  *Id.* at 806. The BIA clarified that an alien is not "properly included" in a mandatory detention category under § 1226(c) when an Immigration Judge or the BIA is convinced that the INS "is *substantially unlikely* to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention."  *Id.* (emphasis added).  Such a standard, the *Joseph* board reasoned, would give both (1) "significant weight" to the INS's initial custody determination, in line with congressional intent that

certain categories of removable aliens should be mandatorily detained, and (2) "genuine life" to the regulation that allows the Immigration Judge to reexamine the INS's determination. *Id.* at 807. In that connection, the BIA further explained that an alien could seek a hearing at the commencement of the removal proceedings, and the Immigration Judge could make a determination based upon evidence presented at that time; however, the BIA instructed the Immigration Judge to "look forward to what is likely to be shown during the hearing on the underlying removal case." *Id.* In other words, in order to support its "reason to believe" obligation at a preliminary hearing, the INS would not necessarily be required to provide, for example, a certified copy of the alien's conviction that served as the basis for mandatory detention, even though such a document ordinarily would be necessary for the Government to meet its burden of demonstrating that the alien should be removed. *See id.*

The hearing and standard set forth in *Joseph* has since been applied to any alien seeking a determination that he or she is not properly included under the mandatory detention statute, and is commonly referred to as a "*Joseph* hearing." *Demore v. Kim*, 538 U.S. at 514 n.3 (referencing *Joseph* hearing); *see, e.g.*, *In Matter of Davey*, 26 I. & N. Dec. 37, 38 (BIA 2012) (noting that Immigration Judge applied *Joseph* "substantially unlikely" standard to alien challenging mandatory detention status).

### C.      Plaintiffs' Arguments

Plaintiffs raise two primary challenges to the application of, and procedures related to, mandatory detention under § 1226(c). First, Plaintiffs challenge the scope of § 1226(c), namely who may argue that he or she is not properly mandatorily detained under the statute. In that connection, Plaintiffs argue that the language of § 1226(c) is

ambiguous, and that the Court should interpret the phrase "is deportable" for mandatory detention purposes to cover only those aliens who do not have a "substantial challenge" to deportability—whether by virtue of the fact that they ultimately (1) may be adjudged not to be deportable or (2) may be found to be deportable under § 1226(c) but nevertheless obtain discretionary relief that prevents them from actually being deported. Second, in addition to, and apart from, who should be able to obtain a *Joseph* hearing, Plaintiffs argue that the current standard and burdens imposed by the BIA at the *Joseph* hearing effectively preclude any alien from challenging the merits of the Government's determination that the alien is properly included under the mandatory detention statute. Finally, Plaintiffs challenge the constitutional and statutory propriety of other associated procedures used by the Government in enforcing § 1226(c), attacking the adequacy of the notice concerning the availability of a *Joseph* hearing as well as the lack of a contemporaneous record made at such a hearing.

To reiterate, in light of the *Demore* decision, in neither of their claims are Plaintiffs challenging the constitutionality of mandatory detention *per se*. Plaintiffs' attack on pre-removal immigration detention only concerns *who* should be mandatorily detained, and how a detainee may challenge detention, not mandatory detention itself. Plaintiffs' individual habeas petitions did not request immediate release from detention, and they are not requesting such relief with respect to the prospective class. Instead, Plaintiffs simply seek an interpretation of the statute and regulation governing mandatory detention, and/or the BIA's decision in *Joseph*, that would allow an Immigration Judge to

consider the question of bond for aliens such as Plaintiffs under the custody standards of 8 U.S.C § 1226(a).[20]

The Government moves to dismiss Plaintiffs' claims, arguing first that the plain language of § 1226(c) is unambiguous and provides for the mandatory detention of all aliens that *prima facie* fall under the criminal categories in the statute, without regard to whether they will ultimately be deported.  The Government further relies on *Demore* to support its reasoning, asserting that in upholding the constitutionality of mandatory detention under § 1226(c), the Supreme Court did not base its decision on the actual deportability of the detained alien.  With respect to Plaintiffs' challenge to the *Joseph* hearing and the other procedures associated with mandatory detention, the Government argues that none of the Named Plaintiffs have adequately alleged an injury as a result thereof, and thus lack standing to bring their constitutional challenge.  The Government also argues that, in any event, the *Joseph* hearing standard and other mandatory detention procedures are constitutionally adequate.  As I noted previously, although a standing challenge normally must be addressed first because it implicates a court's subject-matter jurisdiction, here I begin my analysis by addressing the parties' arguments regarding who

---

[20]    Section 1226(a) provides in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General—
>> (1) may continue to detain the arrested alien; and
>> (2) may release the alien on—
>>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>> (B) conditional parole . . . .

8 U.S.C. § 1226(a).

is entitled to challenge his or her classification under the mandatory detention statute, because resolution of this issue will determine whether Named Plaintiffs have viable claims with respect to the adequacy of the *Joseph* hearing and related procedures.

       1.     *Challenges to Inclusion under § 1226(c)*

      Plaintiffs ask this Court to interpret § 1226(c) and corresponding regulation, 8 C.F.R. § 1003.19(h), to allow for a broader category of mandatorily detained aliens to raise a challenge to their custody status—namely, the category should include any alien who has a "substantial challenge" to his or her ultimate removal, including those aliens who are adjudged to be removable but may receive discretionary relief from actual deportation.   Plaintiffs acknowledge that the statute by its own terms applies to "individuals who are 'deportable' on designated criminal grounds."   TAC, ¶ 52. Nevertheless, Plaintiffs claim that the term "is deportable," and the related term "is removable," are not defined or used consistently in the INA, and are thus ambiguous.  *Id.* at ¶ 57.   Specifically, Plaintiffs posit that "is deportable" could refer either to (1) any alien that meets the threshold criteria for deportation, without regard to whether the alien is actually deported, or (2) only those aliens who actually will be deported.   In light of this alleged ambiguity, Plaintiffs contend that, in order to avoid potential constitutional issues, § 1226(c) should be read as not applying to any alien who has a "substantial challenge to [his or her] final deportability."  *Id.* at ¶ 60.   In other words, Plaintiffs seek an interpretation of the statute that would allow a challenge to mandatory detention to be raised either by an alien who has a threshold challenge to removal, *e.g.*, that the alien's predicate conviction(s) on which removal is based is not covered by § 1226(c), or by an alien who has a substantial claim to discretionary relief from removal, *e.g.*, that the alien

may be eligible for cancellation of removal or adjustment of status.[21] *Id.* The Government opposes Plaintiffs' interpretation on the basis that the plain language of the statute unambiguously covers all aliens who are potentially removable, regardless of whether they are actually deported, and that the current operation of § 1226(c) and corresponding regulation do not raise any of the constitutional due process concerns posited by Plaintiffs.

Contrary to Plaintiffs' position, the Supreme Court's decision in *Demore* all but forecloses the argument that the term "is deportable," as used in § 1226(c), means something other than an alien who *prima facie* qualifies for removal under that statute's criteria. In upholding the constitutionality of mandatory detention, the *Demore* court focused in large part on the fact that the alien had not argued that "he himself was not 'deportable' within the meaning of § 1226(c)." *Demore*, 538 U.S. at 522. The court further explained in an accompanying footnote that by "conceding" his deportability "at all previous stages of this proceeding," the alien "by his own choice did not receive one of the procedural protections otherwise provided to aliens detained under § 1226(c)," *i.e.*, the *Joseph* hearing. *Id.* at 522 n.6 (cross-referencing *id.* at 514 n.3, which noted that the "'*Joseph* hearing' is immediately provided to a detainee who claims that he is not covered by § 1226(c)"). Significantly, the *Demore* court clarified that, "[l]est there be

---

[21]     Similarly, Plaintiffs also challenge the limited nature in which the BIA's decision in *In re Joseph*, 22 I. & N. Dec. 799, defines the individuals who are "deportable" within the meaning of the statute. Plaintiffs contend that *Joseph* adopts a construction of this term that raises serious constitutional concerns that could otherwise be avoided, and therefore this Court should reject the *Joseph* standard as an impermissible construction of § 1226(c). *See* TAC, ¶ 71. I need not reach this argument because I conclude that the statute itself is not ambiguous, and, further, that *Joseph*'s treatment of the term "deportable" is consistent with the statutory language.

any confusion . . . by conceding he is '*deportable*' and, hence subject to mandatory detention under § 1226(c), [the alien] did not concede that he *will ultimately be deported.*"[22] *Id.*  In other words, regardless of whether the alien has a challenge to his ultimate removal, the *Demore* court held that it is constitutionally permissible to mandatorily detain a deportable alien covered by § 1226(c), pending removal proceedings, for a reasonable period of time.  In doing so, the *Demore* court implicitly acknowledged that the *Joseph* hearing is only available to those aliens challenging whether they fell within § 1226(c); if the alien concedes that § 1226(c) applies, it is constitutionally permissible to detain that alien without a bond hearing even if that alien also has a challenge to his or her ultimate removal on other grounds.  In sum, the *Demore* Court did not consider it relevant to the constitutionality of § 1226(c) whether the statute applies to a "deportable" alien who nevertheless might not ultimately be deported.

Admittedly, the issue in *Demore* of who should be included in the statute is dictum, as the sole issue before the Court was whether an alien who conceded his actual deportability could be mandatorily detained without an individualized determination of dangerousness or risk of flight.  Thus, I acknowledge that, in *Demore*, the Supreme Court was not specifically called upon to interpret the term "is deportable" in deciding the constitutionality of mandatory detention with respect to "deportable" aliens; however, it is apparent that none of the Justices seemed concerned with distinguishing mandatorily detained aliens who fall within the criminal categories specified in § 1226(c) from those aliens who concede their deportability under that statute but also have the potential to

---

[22]   The *Demore* court referenced Justice Souter's concurring and dissenting opinion that noted that the alien had applied for discretionary relief in the form of withholding of removal.  *Demore*, 538 U.S. at 522 n.6.

obtain discretionary relief from their actual removal. Indeed, even Justice Souter, dissenting in *Demore*, acknowledged that aliens could be "covered" by § 1226(c) and still have a challenge to their ultimate removal. *Demore v. Kim*, 538 U.S. at 561 (Souter, J., dissenting) ("Some individual aliens covered by § 1226(c) have meritorious challenges to removability or claims for relief from removal.").

This reading of *Demore* is further buttressed by the fact that the other Courts of Appeals decisions explicitly abrogated by *Demore* concerned aliens who had either conceded deportability or had been adjudicated deportable but nevertheless raised a defense to actual removal. *Patel v. Zemski*, 275 F.3d 299, 308 (3d Cir. 2001) (holding that "mandatory detention of aliens after they have been found subject to removal but who have not yet been ordered removed because they are pursuing their administrative remedies violates their due process rights unless they have been afforded the opportunity for an individualized hearing at which they can show that they do not pose a flight risk or danger to the community") *abrogated by Demore v. Kim*, 538 U.S. 510; *Welch v. Ashcroft*, 293 F.3d 213, 217-18 (4th Cir. 2002) ("Although the DOJ maintains that Welch is deportable, his removal is not certain. . . . A successful application for either citizenship or cancellation of removal will effectively terminate the DOJ's current efforts to remove Welch.") *abrogated by Demore v. Kim*, 538 U.S. 510.

Beyond *Demore*, the term "deportable" and the related term "deportability" have long been used to refer to whether an alien meets the criteria that would cause him to be removed, independent of whether that alien qualified for discretionary relief that would prevent him from being ultimately deported. *See Foti v. Immigration and Naturalization Service*, 375 U.S. 217, 223 (1963) ("[T]he administrative discretion to grant a suspension

23

of deportation has historically been consistently exercised as an integral part of the proceedings which have led to the issuance of a final deportation order, and discretionary relief, if sought, must be requested prior to or during the deportation hearing.   The hearings on deportability and on an application for discretionary relief have, as a matter of traditional uniform practice, been held in one proceeding before the same special inquiry officer, resulting in one final order of deportation. *Significantly, when suspension is granted, no deportation order is rendered at all, even if the alien is in fact found to be deportable.*" (Emphasis added.)); *Sandoval v. Reno*, 166 F.3d 225, 239 (3d Cir. 1999) ("Prior to AEDPA, INA § 212(c) permitted deportable aliens, other than those who had committed specified crimes (such as aggravated felonies and crimes of moral turpitude), to apply to the Attorney General for a waiver of deportation.  AEDPA § 440(d) added drug offenses to the list of deportable offenses that made aliens ineligible for discretionary relief."); *Parra v. Perryman*, 172 F.3d 954, 956 (7th Cir. 1999) (noting that "an immigration judge concluded that Parra is deportable *and* ineligible for any relief from removal" (emphasis added)); *Yanez v. Holder*, 149 F. Supp. 2d 485, 488 (N.D. Ill. 2001) ("Garza admits that he is deportable on grounds he was convicted of a firearm charge.  At his removal hearing, Garza challenged the INS's aggravated felony charge and argued that, if he is not an aggravated felon, he is eligible for discretionary relief from removal under INS § 240A.").[23] *But see Sengkeo v. Horgan*, 670 F. Supp. 2d 116,

---

[23]      Likewise, in a recently issued opinion relating to whether an alien was eligible for cancellation of removal, the Third Circuit noted as follows:

> Significantly, our holding that a conviction under N.Y. Penal Law § 150.10 [for arson] does not constitute an aggravated felony does not mean that Bautista will escape deportation.  It only means avoiding mandatory

128 (D. Mass. 2009) (using the term "deportability" to refer to whether alien would actually be deported in light of her challenge under the Convention Against Torture). I therefore find that "is deportable," as used in § 1226(c) and by the Supreme Court in *Demore*, is not ambiguous.  Rather, such a term refers to those aliens who, by virtue of having committed certain crimes, are subject to removal proceedings and, in the case of § 1226(c), mandatory detention.[24]

Furthermore, adopting Plaintiffs' broader application of the regulation by making the right to a *Joseph* hearing available to any alien who has a substantial challenge to removal, rather than merely a challenge to his or her classification under § 1226(c), would undermine the congressional purpose of the statute.  Prior to the enactment of § 1226(c) and the current mandatory detention scheme, the INS and Immigration Judges had the discretion not to detain removable aliens; however, in response to perceived

---

removal.  Bautista has conceded his removability for committing a crime involving moral turpitude, and now will be eligible to apply for cancellation of removal . . . .

*Bautista v. Attorney General of the United States*, ___ F.3d ___, 2014 WL 783019, at *11 n.8 (3d Cir. 2014).

[24]   Thus, I am not persuaded by Plaintiffs' argument, advanced previously in response to a motion to dismiss the Second Amended Petition/Class Action Complaint, that the INA ambiguously employs the term "is deportable."  In support, Plaintiffs point to a definitional section of the INA, which sets forth that "[t]he term 'order of deportation' means the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation."  *See* Dkt. No. 56 (Pls. Reply to Def. Motion to Dismiss), 2-3 (quoting 8 U.S.C. § 1101(a)(47)(A)).  This limited example of the phrase "is deportable" being used in the context of actual deportation appears only in the section of the INA defining the deportation order.  As noted above, in circumstances that do not reference a final deportation order, courts have routinely treated the phrase "is deportable" to refer to the threshold determination of deportability.

institutional failures of the immigration system—in particular, a finding that "more than 20% of deportable criminal aliens failed to appear for their removal hearings"—Congress acted to remove this discretion with respect to a certain category of aliens. *See Demore v. Kim*, 538 U.S. at 520-21 (explaining that § 1226(c) strongly circumscribes the Attorney General's discretion over custody determinations for certain deportable aliens). As the Third Circuit has explained "[s]ection 1226(c) was intended to remedy this perceived problem [of aliens failing to appear at proceedings] by ensuring that aliens convicted of certain crimes would be present at their removal proceedings and not on the loose in their communities, where they might pose a danger." *Diop v. ICE/Homeland Sec.*, 656 F.3d at 231-32 (citing *Demore*, 538 U.S. at 519; *id.* at 531 (Kennedy, J., concurring)); *Demore*, 538 U.S. at 528 ("[Section 1226(c)] necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."). Thus, § 1226(c) represents a clear congressional intent to remove from the immigration authorities the discretion not to detain a certain category of aliens.[25] *See id.*

---

[25]     While it appears that the primary basis for mandatory detention was congressional concern over the possibility that potentially deportable aliens who were not detained would fail to appear for their removal proceedings, frustrating the Government's removal efforts, *see Diop v. ICE/Homeland Sec.*, 656 F.3d at 231-32 (citing *Demore v. Kim*, 538 U.S. at 519; *id.* at 531 (Kennedy, J., concurring)), nevertheless, the reports and data relied on by Congress in enacting § 1226(c), and by the Supreme Court in upholding the constitutionality of the law, have been heavily criticized by several scholarly commentators as inaccurate and misleading. Scholars question whether there was in fact a significant percentage of removable aliens who actually appeared before an Immigration Judge for a bond hearing that then failed to return for their remaining proceedings. *See, e.g.*, Alina Das, *Immigration Detention: Information Gaps and Institutional Barriers to Reform*, 80 U. CHI. L. REV. 137, 151-52 (2013) ("The nonappearance statistics [relied on by Congress in enacting § 1226(c)]—which did not clearly distinguish between noncitizens never detained by INS, noncitizens released by

Plaintiffs' proposed interpretation of § 1226(c) runs counter to this purpose—a purpose that the Supreme Court ruled was constitutional in *Demore*—by narrowing the category of aliens whom the immigration authorities lack the discretion not to detain. In

---

INS on a low bond, or noncitizens released by an immigration judge after a bond hearing—reveal little if anything about the effectiveness of bond hearings."); Margaret H. Taylor, *Demore v. Kim: Judicial Deference to Congressional Folly*, in DAVID A. MARTIN AND PETER H. SCHUCK, EDS., IMMIGRATION STORIES 343, 348 (Foundation 2005) ("It was not . . . a history of making poor judgments about flight risk or dangerousness, that caused the INS to have such a weak record of deporting criminal offenders. Rather, the agency . . . had no system in place to keep track of those who remained at liberty pending deportation or after a final order was entered against them."); *see also Demore v Kim*, 538 U.S. at 563 (Souter, J., concurring in part and dissenting in part) (arguing that the congressional reports "tell[] us nothing about flight risk at all because . . . the INS was making its custody determinations . . . in large part, according to the number of beds available in a particular region." (Internal quotation marks omitted.)).

Plaintiffs also posit that detention is costly. While, on this motion to dismiss, the parties have not presented evidence comparing the costs of detention to the costs of additional hearings, as would be required under Plaintiffs' proposed interpretation of § 1226(c)—and thus I make no explicit finding in this regard—at least one commentator cited by Plaintiffs has gleaned from recent DHS budget documents that, at a minimum, the "federal government . . . spends $122 per day to detain a noncitizen facing removal . . . [and] taxpayers spend $1.9 billion on immigration detention annually." Das, *Immigration Detention*, 80 U. CHI. L. REV. at 143 (citing DHS, Congressional Budget Justification: FY 2012, 938-39 (2012)); *see also id.* at 143 n.33 (explaining that the average costs of immigration detention increase when operating costs are taken into account). At the very least, the cost of detention merits consideration of whether a broad application of the mandatory detention statute aligns with the public's fiscal interests; indeed, it may be that the increased administrative burden and costs associated with allowing a broader group of aliens to challenge their mandatory detention, as Plaintiffs propose, is still less than the costs of detaining those aliens.

Lastly, I note that Plaintiffs argue that mandatory detention is problematic because it may make it more difficult for mandatorily detained aliens to secure legal representation in their removal proceedings. In that connection, Plaintiffs cite a recent study showing both (i) the lack of representation for mandatorily detained aliens, and (ii) a positive correlation between representation and a favorable outcome for the alien in the removal proceedings. *See* Steering Committee of the New York Immigrant Representation Study Report, *Accessing Justice: the Availability and Adequacy of Counsel in Removal Proceedings*, 33 CARDOZO L. REV. 357, 363 (2011). As with Plaintiffs' other similar arguments, although the findings in this study raise concerns over the effects of mandatory detention, this type of data is more properly considered by Congress, and not this Court in interpreting § 1226(c).

other words, by providing any alien who has a substantial challenge to removal to obtain a hearing challenging his or her mandatory detention, despite that alien fitting within the strictures of § 1226(c), Plaintiffs seek to allow an Immigration Judge the opportunity to release the category of aliens that Congress explicitly determined should not be afforded that opportunity.  Such an interpretation fails as it runs counter to congressional intent as expressed in the plain language of § 1226(c).  *See Lin-Zheng v. Atty. Gen.*, 557 F.3d 147, 156 (3d Cir. 2009) ("In matters of statutory construction, the duty of this Court is to give effect to the intent of Congress, and in doing so our first reference is of course to the literal meaning of the words employed." (quoting *Flora v. United States*, 357 U.S. 63, 65 (1958))).

In sum, Plaintiffs' argument that, constitutionally, a *Joseph* hearing must be afforded to all aliens who have a substantial challenge to their removal—regardless of whether these aliens are concededly subject to § 1226(c)—must be rejected.  First, the Supreme Court explicitly has held that Congress has the power to detain removable aliens pending their removal proceedings for a reasonable amount of time, and specifically, that there is sufficient justification for detaining without bond the certain categories of aliens identified by Congress in § 1226(c).  *Diop v. ICE/Homeland Sec.*, 656 F.3d at 231-32 ("[The Supreme Court] reasoned that, although Congress's powers are limited by the Due Process Clause, aliens' due process rights are not necessarily violated when they are initially detained without a specific, individualized, finding that a particular alien poses a flight risk or a risk of danger to the community." (Citing *Demore v. Kim*, 538 U.S. at 523-34.)).  Second, in upholding the constitutionality of § 1226(c), the Supreme Court relied on the existence of a procedural safeguard—the *Joseph* hearing—that would allow

someone to challenge mandatory detention *solely* on the basis that § 1226(c) did not apply; however the *Demore* Court did not find it significant that some of these aliens who fall within § 1226(c)'s categories may also have a challenge to their ultimate removal based on discretionary administrative remedies.  Thus, if it does not violate the Constitution to detain certain deportable aliens without an individualized finding of dangerousness or flight, *and* without regard to the likelihood of their ultimate removal, *a fortiori* it does not violate the Constitution to limit the availability of the *Joseph* hearing to only those individuals challenging whether they fall within the categories of aliens to which § 1226(c) applies.  Accordingly, I reject Plaintiffs' argument that those aliens who concede their deportability under the terms of the statute, but still have a substantial challenge to removal on other discretionary grounds, can challenge whether they are "properly included" under § 1226(c) for mandatory detention purposes.[26]

Thus, while I reject Plaintiffs' proposed interpretation of § 1226(c) on this motion, I nevertheless appreciate the concerns with, and practical ramifications of, preventing all aliens with a substantial challenge to removal from obtaining a hearing challenging their detention.  *See supra*, Footnote 25.  It is not for this Court, however, to contravene Supreme Court and Third Circuit precedent, or to intrude upon the role of Congress, and so I am constrained to dismiss Plaintiffs' challenge to the Government's

---

[26]    Similarly, there is no basis for claiming that the very existence of 8 C.F.R. § 1003.19(h) and the *Joseph* hearing demonstrates congressional intent to insure that all aliens with substantial challenges to removal can challenge their mandatory detention status.  The mere fact that the Government has a regulation and the BIA has established a procedure to provide a hearing for aliens to challenge whether they have been properly mandatorily detained does not inform whether Congress intended § 1226(c) to apply to all aliens who *prima facie* fall within the scope of the statute, without regard to their ultimate deportation.

§ 1226(c)'s application to all aliens who *prima facie* fit within the statute's criminal categories, despite their having other discretionary grounds for challenging removability.

> 2.    *Plaintiffs' Standing*

The Government opposes Plaintiffs' due process challenge to the *Joseph* hearing and related procedures on two grounds.  First, the Government contends that none of the Named Plaintiffs has standing to bring such a claim because there is no allegation that any of the Named Plaintiffs suffered any injury, and second, that neither § 1226(c) nor *Demore* supports Plaintiffs' claims.

To satisfy the "case or controversy" standing requirement under Article III, a plaintiff must establish that he or she has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action.  In the jurisprudence of standing, a "litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991); *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75 (1982); *Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994).  A plaintiff will fail to meet this requirement if the plaintiff merely raises a "generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992).  Thus, in challenging the application of a federal statute—as Plaintiffs do here—the challengers must show that they have already sustained, or are in

immediate and certain danger of sustaining, a real and direct injury. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923).

In this case, my inquiry must begin with Named Plaintiffs' standing. *Winer Family Trust v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) (holding that the "initial inquiry" into standing in a putative class action is "whether the lead plaintiff individually has standing, not whether or not other class members have standing"); *see also Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) ("Nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject."). Here, then, my first question is whether any of the Named Plaintiffs has suffered an injury-in-fact due to allegedly inadequate mandatory detention procedures.

The Government contends that Plaintiffs lack standing to challenge the constitutionality of the *Joseph* hearing and its associated procedures because none of the three Named Plaintiffs has alleged his entitlement to such a hearing. Review of Plaintiffs' TAC reveals the following general allegations and claims concerning the *Joseph* hearing and other mandatory detention procedures:

- "Plaintiffs are among hundreds of detainees in New Jersey held pursuant to the government's sweeping misapplication of the mandatory immigration detention statute, 8 U.S.C. § 1226(c)." TAC, ¶ 60.

- "On any given day, there are roughly 200-400 proposed class members in New Jersey who, like Plaintiffs, are subject to mandatory detention under the Joseph standard and the agency's deficient procedures." *Id.* at ¶ 64.

- "[T]here are several common questions of law and fact in this action, including (1) whether the government's policy of subjecting non-citizens to mandatory detention under the unlawful *Joseph* standard and deficient hearing procedures is authorized by statute . . . ." *Id.* at ¶ 65.

31

- "[L]ike all the proposed class members, the Named Plaintiffs are individuals who, pursuant to the government's policy, have been subjected to mandatory detention under the *Joseph* standard and deficient hearing procedures pending completion of removal proceedings." *Id.* at ¶ 66.

- "Proposed class members are currently subject to mandatory immigration detention without the substantive and procedural protections that such a significant deprivation of liberty requires." *Id.* at ¶ 71.

- "[P]roposed class members have been subject to mandatory detention under the BIA's unlawful *Joseph* standard and without an adequate hearing . . . ." *Id.* at ¶ 76.

- "[D]etainees who request and obtain a *Joseph* hearing can prevail only if they show that the government's charges are frivolous—*i.e.*, that their criminal offense clearly does not render them 'deportable' or 'inadmissible.'" *Id.* at ¶ 54.

- "[B]ecause the custody determination notice that the government provides to individuals subject to mandatory detention states that no review of their custody determinations is available, many, and perhaps most, of these detainees are not even aware that they may request a *Joseph* hearing . . . ." *Id.* at ¶ 55.

Although Plaintiffs speak in terms of the "unlawful *Joseph* standard" and "deficient hearing procedures," these allegations are too generalized to show that Named Plaintiffs suffered any actual injury-in-fact.  Accordingly, I must turn to the facts specific to each of the Named Plaintiffs.

Plaintiff Garfield Gayle has sufficiently alleged standing to challenge the *Joseph* hearing and associated procedures.  Unlike the alien in *Demore*, Gayle has not conceded his removability.  Indeed, the TAC contains allegations that Gayle is seeking termination of his removal proceedings because he contends that the Government cannot meet its burden of proving the existence of the 1995 state conviction for drug possession with intent to sell—the crime on which the Government bases its removal proceedings.  *See* TAC, ¶¶ 26-29.  The *Demore* Court acknowledged that a *Joseph* hearing is available to an alien challenging his or her basis for removal.  *See Demore*, 538 U.S. at 514 n.3; *see*

32

*also Joseph*, 22 I. & N. at 806-807. Thus, based on the facts and pleadings currently before the Court, it appears that Gayle could properly have sought and obtained a *Joseph* hearing. Further supporting Gayle's standing are his statements, in a declaration, that he sought but did not receive a *Joseph* hearing.[27] Specifically, Gayle declared that on the I-286 Notice to Appear form he received from ICE on March 24, 2012, he checked a box requesting a redetermination of his custody hearing by an Immigration Judge. *See* Dkt. No. 31-30 (Decl. of Garfield Gayle, dated Jan. 23, 2013), ¶ 1. However, Gayle stated that (i) he never received any such hearing, (ii) ICE never told him that he was entitled to a *Joseph* hearing, and (iii) when Gayle first appeared before the Immigration Judge, Gayle was told he was not eligible for any hearing with respect to his detention status. *See id.* at ¶ 2. In light of the foregoing, I find that Gayle had a basis for challenging his inclusion under § 1226(c), which he did not waive or otherwise concede, and thus, Gayle has standing to bring a challenge to the adequacy of the *Joseph* hearing and its associated procedures.

Plaintiff Neville Sukhu, also has standing to challenge the Government's mandatory detention procedures, including the *Joseph* hearing. The TAC contains allegations that ICE charged Sukhu with being deportable and removable based on a 1997 state assault conviction and a 2011 state turnstile jumping conviction, and, as a result, detainable under § 1226(c). TAC, ¶ 47. The TAC also contains an allegation that,

---

[27]    Although Gayle's declaration, like others I consider in this Opinion for standing purposes, was attached to a previously filed pleading, given (i) the nature of how this matter has progressed, with the amended pleadings filed only in connection with the Named Plaintiffs' individual habeas claims, (ii) the fact that the affidavit is wholly consistent with Plaintiffs' TAC allegations, and (iii) the Government does not appear to dispute these allegations, I find it appropriate to rely on the declaration in ruling on the Government's motion to dismiss the TAC.

prior to his removal being terminated on discretionary grounds, Sukhu had a substantial argument for termination of his removal proceedings on the basis that his assault conviction is not a crime involving moral turpitude.  *Id.* at ¶ 48.  Like Gayle, such an argument is a basis for Sukhu to challenge, in a *Joseph* hearing, his inclusion in § 1226(c); if the assault conviction is not a crime involving moral turpitude, then Sukhu's criminal record would not place him in mandatory detention.  *See id.*; 8 U.S.C. § 1226(c). Notably, the Government does not appear to contest this fact.  Moreover, and again like Gayle, Sukhu submitted an affidavit explaining that upon receipt of the I-286 form, Sukhu checked the box requesting a redetermination of his custody status but never received any such hearing.  *See* Dkt. No. 31-24 (Decl. of Neville Sukhu, dated Jan. 23, 2013), ¶ 3.  Sukhu further declared that when he finally appeared before an Immigration Judge for his removal proceeding, the Immigration Judge told Sukhu that he was subject to mandatory detention, which led Sukhu to believe he could not ask for review of his custody status.  *See id.* at ¶ 4.

Finally, with respect to Plaintiff Sheldon Francois, the TAC makes clear that throughout his removal proceedings he only has claimed a strong case to challenge his ultimate deportability through discretionary relief in the form of cancellation of removal. *See id.* at ¶¶ 37, 41.  There is no allegation that he ever challenged his detention by requesting a *Joseph* hearing on the basis that he was not properly included under § 1226(c), or otherwise challenging the Government's *prima facie* case of deportability.[28]

---

[28]    This Court denied the Government's previous motion to dismiss Plaintiffs' First Amended Complaint ("FAC"), which contained a claim virtually identical to the one discussed above, based in part on the declaration of Plaintiff Sheldon Francois attached to Plaintiffs' response to the Government's motion to dismiss.  In that declaration, Francois

Cognizant of the principle espoused by the Third Circuit that the requirement to "clearly and specifically set forth facts sufficient to satisfy [the] standing requirements," should not be "exaggerated" at the motion to dismiss stage, *see Hosp. Council of W. Pa. v. City of Pittsburgh*, 949 F.2d 83, 86-87, 88 (3d Cir. 1991), I find that both Gayle and Sukhu have pleaded facts sufficient to demonstrate standing to challenge the issue of the constitutional adequacy of the *Joseph* hearing: at the time their original pleadings were filed, Gayle and Sukhu had claims that they should not be detained under § 1226(c). *See also Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 104 (1998) (holding that at the pleading stage, the court may "presume that the general allegations in the complaint [as to standing] encompass the specific facts necessary to support those allegations"). Specifically, Gayle had a claim that the Government could not prove its case for removal,

_____

stated that he received Form I-286 Notice of Custody Determination from U.S. Immigration and Customs Enforcement—the form at question in Plaintiffs' procedural challenges—which indicated that Francois was being detained and that he could not request review of his detention by an Immigration Judge. *See* Pl. Response to Gov't First Motion to Dismiss, Dkt. 31-27 (Decl. of Sheldon Francois), ¶ 3. Francois further declared that he nevertheless checked a box on the form requesting a hearing, but never received one. At oral argument on May 10, 2013, I stated that Francois's declaration provided a sufficient basis to find that Plaintiffs had standing to pursue their challenge to the *Joseph* hearing procedures, finding the form to be confusing and/or misleading, a fact that the Government appeared to acknowledge as well. *See* Tran. Oral Arg., May 10, 2013, T18:3-T21:6.

My original analysis is altered now that I have concluded that the *Joseph* hearing applies only to those aliens who have a challenge to their inclusion in § 1226(c), rather than to those who have a substantial challenge to their removal. Francois never alleged or argued that he was not properly included under § 1226(c); he only claimed that he had a strong case to challenge his ultimate deportability through *discretionary relief* in the form of cancellation of removal. Thus, the pleadings as well as Francois' declaration are insufficient to confer standing to challenge the *Joseph* hearing because Francois himself, like the detained alien in *Demore*, conceded that his detention was proper under the plain terms of § 1226(c). *See Demore v. Kim*, 538 U.S. at 514 n.3; *id.* at 522 & n.6 (explaining that by conceding deportability, detained alien "by his own choice" did not receive *Joseph* hearing). In sum, Francois has no standing to challenge the *Joseph* hearing and associated procedures.

and Sukhu had a claim that the nature of his criminal offenses did not subject him to mandatory detention.

I do not find it determinative for standing purposes, as the Government suggests, that neither Gayle nor Sukhu ever received a *Joseph* hearing.   In order for Gayle and Sukhu to have standing, it is not necessary that they obtained a *Joseph* hearing because, based on the facts as plead, both Gayle and Sukhu were entitled to such a hearing— irrespective of whether such a hearing would have been nothing more than an exercise in futility, as discussed *infra*.  *See Massachusetts v. EPA*, 549 U.S. 497, 518 (2007) (quoting *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94-95 (D.C. Cir. 2002) ("A plaintiff who alleges a deprivation of a procedural protection *to which he is entitled* never has to prove that if he had received the procedure the substantive result would have been altered." (Emphasis added.)); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 572 n.7 (1992) ("The person *who has been accorded a procedural right* to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy." (Emphasis added.)); *cf. Newark Branch, NAACP v. Harrison*, 907 F.2d 1408, 1415 (noting that "[t]hreatened injury can constitute injury-in-fact [for purposes of establishing standing] where the threat is so great that it discourages the threatened party from even attempting to exercise his or her rights" (internal quotation marks omitted)). Indeed, as explained in more detail *infra*, Plaintiffs' TAC also alleges that the Government fails to provide adequate notice of *Joseph* hearings to mandatorily detained aliens and, worse, in fact provides mandatorily detained aliens with an affirmatively

misleading document informing these aliens that they are not entitled to any hearing.[29]
*See* TAC, ¶ 55.  In light of this fact, I also find that because Gayle and Sukhu have standing to challenge the adequacy of the *Joseph* hearing, they similarly have standing to challenge the adequacy of the procedures employed by the Government in carrying out a *Joseph* hearing.[30]

In sum, the TAC does not contain allegations sufficient to demonstrate that Francois sustained an injury-in-fact related to the *Joseph* hearing or its associated procedures.  Rather, Francois is akin to the alien in *Demore*, who, by conceding deportability, "by his own choice" forewent the opportunity to receive a *Joseph* hearing to contest that his detention was proper under § 1226(c).  *See Demore v. Kim*, 538 U.S. at 514 n.3, 522 & n.6.  Conversely, Gayle and Sukhu have alleged facts showing that they had a challenge to whether they were properly detained under § 1226(c), and thus were eligible to receive a *Joseph* hearing; accordingly, Gayle and Sukhu have standing to challenge the adequacy of the hearing and its associated procedures.

### 3.    *Plaintiffs' Challenges to the Joseph Hearing and Related Procedures*

Plaintiffs contend that the *Joseph* hearing does not afford aliens an adequate protection to challenge mandatory detention, and thus, the Government is violating

---

[29]    See my discussion of the I-286 Form, *supra*, Footnote 28.  Although the Government has suggested that mandatorily detained aliens are informed in other ways about their ability to request a *Joseph* hearing, *see* Tran. Oral Arg., May 10, 2013, T18:25-T20:18, I must accept Plaintiffs' allegations as true at this stage.

[30]    On the other hand, because Francois does not have standing to challenge the *Joseph* hearing, he also does not have standing to challenge the procedures associated with that hearing.  The cases Plaintiffs rely on to argue that all three Named Plaintiffs have standing, which are cited in the text above, expressly acknowledge that in order to have standing, the individual must nevertheless be entitled to such procedures in the first instance.

Plaintiffs' constitutional and statutory rights by failing to provide a meaningful hearing. Specifically, Plaintiffs argue that because the *Joseph* hearing requires the mandatorily detained alien to prove that the Government is "substantially unlikely" to prove its case in the immigration proceedings—which evidentiary hurdle is "virtually insurmountable" according to Plaintiffs—an alien detained under § 1226(c) has no meaningful opportunity to challenge whether he or she is "properly included" under the statute.[31] As noted, in order for an alien to show that he or she is not "properly included" in a mandatory detention category under § 1226(c), the alien must prove at a *Joseph* hearing that the DHS "is *substantially unlikely* to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention." *Matter of Joseph*, 22 I & N. Dec. at 806 (emphasis added). At this juncture, the Government does not dispute that some form of a hearing must be provided to aliens detained pursuant to § 1226(c); it argues only that the *Joseph* hearing satisfies due process and the provisions of the INA.[32] *See* Def. Br. at 18-19. Specifically, the Government argues that Plaintiffs

---

[31]    Further, Plaintiffs appear to be challenging not only the legal standard as it is set forth in *Joseph* but also how Immigration Judges and the BIA have since applied that standard. *See* Tran. Oral Arg., May 10, 2013, T11:23-T12:13.

[32]    At one point in this litigation, the Government argued that the BIA's decision and standard set forth in *Joseph* are subject to deference under *Auer*, as being the reasonable interpretation of the agency's regulations. *See Auer v. Robbins*, 519 U.S. 452 (1997). This argument appears to have been withdrawn, as there is no reference to the *Auer* decision in the Government's motion to dismiss the TAC. Nevertheless, I note that Plaintiffs are challenging *In re Joseph* and the regulation it interpreted, 8 C.F.R. § 3.19(h)(2)(ii), on the basis that the decision and regulation are "substantively unlawful," which would not appear to be governed by *Auer*. *Auer v. Robbins*, 519 U.S. at 459 ("A court may certainly be asked by parties . . . to disregard an agency regulation that is contrary to the substantive requirements of the law . . . ."). Accordingly, I do not find it appropriate to defer to the BIA's *Joseph* decision under *Auer*.

fail to offer any factual allegations in support of their claim that the *Joseph* hearing prevents aliens from challenging whether they are properly included under § 1226(c).

The constitutional adequacy of the *Joseph* hearing is an open question not addressed by the Supreme Court in *Demore* or by the Third Circuit.  *See Demore v. Kim*, 538 U.S. at 514 n.3 ("[W]e have no occasion to review the adequacy of *Joseph* hearings generally in screening out those who are improperly detained pursuant to § 1226(c)."); *Diop v. ICE/Homeland Security*, 656 F.3d 231 n.8 ("[B]ecause the parties do not question the constitutional adequacy of a *Joseph* hearing, we decline to address it here.  We note, however, that the issue is an open one . . . .").  Indeed, the Government acknowledges that neither the Supreme Court nor the Third Circuit has passed on this issue.[33]

According to Plaintiffs, the stringent burden placed on an alien under *Joseph* effectively prevents that alien from meaningfully challenging whether he or she is properly included in § 1226(c), and thus, there are aliens being mandatorily detained improperly simply because they are unable to sustain the onerous burden placed on them by *Joseph*.  In that sense, Plaintiffs' characterization of their challenge to the *Joseph* hearing, as unconstitutional and/or unauthorized by the INA, is viable—section 1226(c) only authorizes, and the Supreme Court only ruled on, mandatory detention for those aliens who fall within the strictures of that statute.  The Government argues, however,

---

[33]     In that connection, it is worth noting that at least one Court of Appeals judge, from the Ninth Circuit, has raised questions concerning whether *Joseph* provides an adequate constitutional safeguard for those aliens who wish to challenge the Government's determination that they should be subject to mandatory detention.  *See Tijani v. Willis*, 430 F.3d 1241, 1244 (9th Cir. 2005) (Tashima, J., concurring) ("The BIA's *Joseph* decision was, plainly put, wrong. . . . [*Joseph*] establishes a system of 'detention by default' by placing the burden fully on the alien to prove that he should not be detained.").

that the *Joseph* hearing and standard is an adequate procedural mechanism to contest detention.

I conclude that Plaintiffs have adequately stated a claim that the *Joseph* hearing fails to provide an alien, who has a challenge to whether he or she is included in § 1226(c), with a meaningful opportunity to challenge his or her detention status. Plaintiffs' TAC is replete with allegations that the incredibly high burden placed on the alien in the *Joseph* hearing—requiring the alien to show that Government is "substantially unlikely" to prove that the alien is deportable—is nearly "impossible to satisfy." *See, e.g.*, TAC, ¶ 54. According to Plaintiffs' allegations, which I must take to be true at this stage, only where aliens can show that the Government's charges are frivolous—"*i.e.*, that their criminal offense *clearly* does not render them 'deportable' or 'inadmissible'"—do aliens detained under § 1226(c) have a chance of showing that they are being mandatorily detained in error. *Id.* (emphasis added). Such a standard is problematic, both under the INA and the Constitution. The characterization of the criminal offense or offenses on which an alien's mandatory detention is based is often not readily apparent. *See Joseph*, 22 I. & N. Dec. at 806-807 (noting same). Indeed, whether an alien's predicate state crimes can be properly categorized as offenses under the INA that would subject the alien to mandatory detention are heavily litigated and frequently result in appeals from the Immigration Judge to the BIA and the Court of Appeals. *E.g.*, *Bautista v. Attorney Gen. of the United States*, ___ F.3d ___, 2014 WL 783019 (3d Cir. 2014) (determining, for purposes of alien's eligibility for cancellation of removal,

whether New York arson conviction qualified as "aggravated felony" under INA).[34] Thus, it is entirely plausible that an alien subject to mandatory detention, who has a bona fide challenge to his or her inclusion under § 1226(c), will nonetheless be unable to show that the Government's charges are clearly frivolous at a *Joseph* hearing.

Moreover, Plaintiffs have alleged, which again this Court accepts as true on this motion and is also in line with the language of *Joseph*, that in order to show that mandatory detention is proper at the *Joseph* stage, the Government does not even have to produce a certified record of the alien's predicate criminal convictions. *See* TAC, ¶ 53; *Joseph* 22 I. & N. Dec. at 807. Not requiring such a *de minimis* burden of production be placed on the Government to show its "reason to believe" that the alien is included under § 1226(c), when combined with the high burden placed on the alien to show that the Government is "substantially unlikely" to prove its case, further makes it plausible that the alien's ability to challenge his or her mandatory detention is all but illusory. The *Joseph* standard is particularly disturbing because the Government must prove ultimate deportability by a clear and convincing evidence standard, "based upon reasonable, substantial, and probative evidence," 8 U.S.C. § 1229a(c)(3)(A)—a standard the Government itself acknowledges, *see* Def. Br. at 19—but the Government appears to have little to no burden of production or proof to show that mandatory detention is proper until the final stages of the removal proceeding.

In that connection, I note that, notwithstanding *Demore*'s countenance of mandatory detention during immigration proceedings for certain categories of aliens, the

---

[34]     Although *Bautista* concerns cancellation of removal, and not mandatory detention, the legal analysis applied by the Immigration Judge, and subsequently on appeal, would be the same in either case. *Cf. Joseph*, 22 I. & N. Dec. at 806-807.

Supreme Court has long and consistently recognized that aliens—especially LPRs such as Plaintiffs—are entitled to "'due process of law in deportation proceedings.'" *Demore*, 538 U.S. at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1992), in turn citing *The Japanese Immigrant Case*, 189 U.S. 86, 100-101 (1903)); *see also Diop*, 656 F.3d at 231 ("[The] Due Process Clause refers to 'any person,' which means that aliens, no less than native-born citizens, are entitled to its protection." (Citing *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).  In light of this due process requirement, and given that the *Joseph* standard essentially reverses the normal burdens applicable in a removal proceeding, I find that Plaintiffs' allegations that *Joseph* is constitutionally infirm are sufficient to withstand the Government's motion to dismiss and to permit discovery to proceed.[35]

In sum, the question of whether *Joseph* provides an alien who is mandatorily detained pursuant to §1226(c) a constitutionally adequate means to challenge the Government's detention determination is an open question.  I conclude that Plaintiffs have more than sufficiently alleged that the burdens placed on aliens at the *Joseph* hearing effectively deprive those aliens of bringing a meaningful challenge to their inclusion in the mandatory detention scheme, thereby preventing aliens who should not be mandatorily detained from being considered for release on bail as would otherwise be appropriate.  Mandatory detention is a severe deprivation of liberty, and thus an alien who has been mandatorily detained but should not have been, because the alien did not fit

---

[35]    For exampe, although not specifically alleged, a plausible inference can be drawn from the facts alleged in the TAC that an alien who has been mandatorily detained under § 1226(c) often may be unlikely to develop a record sufficient to rebut the Government's case because the mandatorily detained alien will be unable to obtain the necessary documents or other proofs necessary to challenge the Government's detention determination.

within § 1226(c), has a viable claim for a violation of his or her due process rights. *See, e.g.*, *Demore*, 538 U.S. at 531-33 (Kennedy, J., concurring) ("[D]ue process requires individualized procedures to ensure there is at least some merit to the [INS'] charge and, therefore, sufficient justification to detain a lawful permanent resident alien pending a more formal hearing."); *Zadvydas*, 533 U.S. at 690 ("A statute permitting indefinite detention of an alien would raise a serious constitutional problem. . . . Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] clause protects."); *Diop*, 656 F.3d at 232 (adopting Justice Kennedy's concurring view in *Demore* that "Congress's broad immigration powers allow it to pass a law authorizing an alien's initial detention [without an individualized bond hearing], so long as those implementing the statute provided individualized procedures through which an alien might contest the basis of his detention"). Accordingly, the Government's motion to dismiss will be denied on the issue of the adequacy and constitutionality of the *Joseph* hearing.[36]

Plaintiffs also seek a judgment declaring that the Government's procedures used in carrying out mandatory detention under § 1226(c), namely those associated with how the *Joseph* hearing is noticed and conducted, violate the INA and/or the Constitution. Specifically, Plaintiffs claim that the following aspects of mandatory detention violate the

---

[36]     To the extent that the Government argues that its motion to dismiss should be granted because Plaintiffs have not adequately alleged that the burden of proving the appropriateness of mandatory detention should be placed on the Government at a *Joseph* hearing, the Government's argument is misplaced. Although Plaintiffs seek such a ruling in their prayer for relief, my analysis of the Government's motion to dismiss turns on whether Plaintiffs have adequately stated a claim for a violation of their constitutional and statutory rights, which I conclude they have, and not on what ultimate relief, if any, may be ordered.

INA and/or Plaintiffs' due process rights under the Constitution: (1) the DHS/ICE form used to inform aliens of the basis for their detention and their right to request a *Joseph* hearing, and (2) the lack of a contemporaneous record during the *Joseph* hearing.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society." *Id.* at 333. Thus, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (Internal quotation marks omitted.)).

Although an alien's mandatory detention for a reasonable period pending removal is constitutional, nevertheless, "'the Fifth Amendment entitles aliens to due process of law in deportation proceedings.'" *Demore v. Kim*, 538 U.S. at 523, (quoting *Reno v. Flores,* 507 U.S. 292, 306 (1993)). Thus, even in circumstances where mandatory detention is constitutionally permissible, due process still requires "adequate procedural protections" to ensure that the Government's stated justification for detaining an alien without a bond hearing "outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas v. Davis*, 533 U.S. at 690 (internal quotation marks omitted); *see id.* at 695 (distinguishing the deferential review afforded to congressional immigration policies from the more stringent review of the implementing procedures used to carry out those policies); *Demore*, 538 U.S. at 531-33 (Kennedy, J., concurring).

44

Plaintiffs have made colorable claims for due process violations arising from the procedures related to mandatory detention.  Specifically, Plaintiffs object to the primary form used to notify aliens of the Government's decision to place them in mandatory detention, Form I-286, which states on the form that an alien detained under § 1226(c) may not request review of his or her custody determination by an Immigration Judge. *See supra*, Footnote 28.  Plaintiffs allege, and the Court agrees, that Form I-286 is flawed. At best, the form is confusing, and at worst, it is affirmatively misleading.  As such, use of this form raises serious issues as to whether aliens who are informed of their mandatory detention status by Form I-286 receive constitutionally adequate notice of their right to a *Joseph* hearing.  Thus, Plaintiffs have stated a claim regarding the adequacy of notice.

Plaintiffs further argue that the lack of a contemporaneous recording or transcript of the *Joseph* hearing prevents any meaningful appeal of the Immigration Judge's decision rendered at or after the hearing.  The Government contends that Plaintiffs have failed to adequately allege how an alien is denied meaningful appellate review by lack of a record, and, further, that appellate review turns largely on legal determinations that do not require a factual record.  The Government's argument, however, is based primarily on the fact that Plaintiffs have not alleged an injury-in-fact.  As I have already explained, having found that Gayle and Sukhu have standing to challenge the adequacy of the *Joseph* hearing, they also have standing to challenge the hearing's associated procedures. *See Massachusetts v. EPA*, 549 U.S. at 518.  I also find that, for the purposes of ruling on the Government's motion to dismiss, it is certainly plausible that the lack of a contemporaneous record could preclude meaningful review of erroneous decisions made

45

by the Immigration Judge in a *Joseph* hearing.  Accordingly, I find that Plaintiff's claims

of procedural due process violations may proceed.

### 4.  *Injunctive Relief*

Lastly, the Government argues, in a single, brief, paragraph, that 8 U.S.C. §

1252(f)(1) precludes class claims for injunctive relief relating to federal immigration

statutes.  Both parties acknowledge that this is an open question in this circuit.  *See Alli v.

Decker*, 650 F.3d 1007, 1009, 1013 (3d Cir. 2011).  Plaintiffs contend that their request

for class-wide declaratory judgment and injunctive relief in this regard does not go to the

"operation" of § 1226(c), *i.e.*, whether the government can employ mandatory detention

for a certain category of aliens pending removal proceedings.  Rather, Plaintiffs submit

that they are challenging, and seeking to enjoin, the implementation of procedures used in

connection with the *Joseph* hearing on the grounds that those procedures have been

implemented in a manner that violates both the Constitution and § 1226(c).

In focusing on the nature of Plaintiffs' challenge—which, again, is based on the

claim that the Government's current mandatory detention procedures violate the INA—it

does not appear that § 1252(f)(1) precludes Plaintiffs from pursuing injunctive relief.  *See

Rodriguez v. Hayes*, 591 F.3d 1105, 1120 (9th Cir. 2010) ("Section 1252(f) prohibits only

injunction of 'the operation of' the detention statutes, not injunction of a violation of the

statutes.").[37]  Plaintiffs are not challenging mandatory detention *per se*, acknowledging

---

[37]    Compare *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999), which held that
§ 1252(f) "forecloses jurisdiction to grant class-wide injunctive relief to restrain
operation of §§ 1221-31 by any court other than the Supreme Court, [and thus it] is
therefore apparent that a district court has no jurisdiction to *restrain the Attorney
General's power to transfer aliens to appropriate facilities* by granting injunctive relief
in a *Bivens* class action suit." (Emphasis added.)

that such a challenge is not available in light of the *Demore* decision.  Instead, Plaintiffs question the constitutional adequacy of the *Joseph* hearing and related procedures meant to ensure that the Government mandatorily detains only those aliens who should be detained under § 1226(c).  In light of this, and given the Government's cursory treatment of this issue and the lack of authority to support its position, the Court declines to dismiss Plaintiffs' claims for injunctive relief at this point.  In any event, Plaintiffs clearly may seek class-wide declaratory relief without running afoul of § 1252(f).  *Alli v. Decker*, 650 F.3d at 1016.  Thus, Plaintiffs' TAC will not be dismissed on this ground.  *Accord Reid v. Donelan*, ___ F.R.D. ___, ___, 2014 WL 545144, at *8 (D. Mass. 2014) (citing *Alli*, *supra*).

**CONCLUSION**

For the foregoing reasons, the Government's motion to dismiss Plaintiffs' claims for declaratory and injunctive relief in Counts One and Two of the TAC is granted to the extent that Plaintiffs are requesting that a *Joseph* hearing be provided to any mandatorily detained alien who has a "substantial challenge" to his or her removal on grounds other than whether the alien falls within the § 1226(c) categories requiring mandatory detention.  For that reason, Plaintiff Francois is dismissed for lack of standing.  The Government's motion to dismiss is denied with respect to Gayle's and Sukhu's challenges to the constitutional and statutory adequacy of the *Joseph* hearing and its related procedures.

Further, in light of my ruling with respect to Plaintiffs' claim on who may obtain a *Joseph* hearing, the current proposed class in Plaintiffs' TAC, which includes *all* aliens detained in New Jersey who have a substantial challenge to removal, is overbroad as it

necessarily includes aliens who, like Francois, concede that they are properly detained under the terms of § 1226(c), but seek a *Joseph* hearing solely because they have a claim for discretionary relief.  Accordingly, Plaintiffs' currently pending motion to certify the class will be terminated and Plaintiffs may re-file that motion with a proposed class limited to those individuals who are entitled to a *Joseph* hearing consistent with this Opinion.

March 14, 2014                                      /s/ Freda L. Wolfson_____
                                                    Freda L. Wolfson, U.S.D.J.