**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

―――――――――――――――――――――― :
GARFIELD GAYLE, et al., :
:
    Plaintiffs/Petitioners, : Civ. Action No.:12-cv-02806(FLW)
:
        v. :
: **OPINION**
WARDEN MONMOUTH COUNTY :
CORRECTIONAL INSTITUTION, et al., :
:
    Defendants/Respondents :
:
―――――――――――――――――――― :

**WOLFSON, United States District Judge:**

      In this case, remanded from the Third Circuit Court of Appeals, the Court must determine, under Rule 23 of the Federal Rules of Civil Procedure, whether to certify a class of individuals in New Jersey who are or will be detained pursuant to the mandatory detention provision of § 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c). More particularly, Plaintiffs Garfield Gayle ("Gayle"), Neville Sukhu ("Sukhu"), and Sheldon Francois ("Francois) (collectively, "Plaintiffs" or "Named Plaintiffs") move under Rule 23(b)(2) for class certification on behalf of a putative class of aliens in New Jersey seeking declaratory and injunctive relief from alleged violations of the INA and the Due Process Clause arising out of the mandatory detention scheme set forth in 8 U.S.C. § 1226(c), and procedural safeguards associated with mandatory

detention.  Defendants, a number of state and federal government agents,[1] (collectively, the "Government" or "Defendants") oppose class certification.

For the reasons set forth below, Plaintiffs' motion for class certification is **GRANTED.**  The Court certifies the following class: the right of all persons within the District of New Jersey, now and in the future, who are mandatorily detained pursuant to 8 U.S.C. § 1226(c) to obtain a bond hearing on the basis of a substantial claim to relief that would prevent the entry of a removal order, which includes challenging the constitutionality of the *Joseph* hearing process, namely, the allocation of the burden of proof and the contemporaneous recording of the hearing.  The representatives for this class are plaintiffs Gayle and Sukhu.  However, because Francois, Gayle and Sukhu are not adequate to represent the class as to the due process claims involving the current version of Form I-286 and its addendum, they lack standing to pursue such claims.  Francois is dismissed from this case.

---

[1]    The named Defendants include Barry Nadrowski, in his official capacity as Warden of Monmouth County Correctional Institution; John F. Kelly, in his official capacity as Secretary of Homeland Security; Jefferson B. Sessions III, in his official capacity as Attorney General of the United States; Thomas Homan, in his official capacity as Acting Director for Immigration and Customs Enforcement ("ICE"); James McHenry, in his official capacity as Acting Director of the Executive Office for Immigration Review; John Tsoukaris, in his official capacity as Field Office Director for Enforcement and Removal Operations, Newark Field Office of ICE; Thomas Decker, in his official capacity as Field Office Director for Enforcement and Removal Operations, New York City Field Office of ICE; Steven Ahrendt, in his official capacity as Warden of the Bergen County Jail; Orlando Rodriguez, in his official capacity as Warden of the Elizabeth Contract Detention Facility; Roy L. Hendricks, in his official capacity as Warden of the Essex County Correctional Facility; and Ron Edwards, in his official capacity as Director of the Hudson County Correctional Facility.

# BACKGROUND

Before describing the facts that underlie this dispute, it is necessary to review the immigration procedures used by U.S. Immigration and Customs Enforcement ("ICE") to effectuate mandatory detention of aliens. As discussed more fully below, when ICE arrests an alien determined to be subject to mandatory detention, ICE issues a Notice of Custody Determination through a Form I-286. Then, after an alien is detained, he or she may request an Immigration Judge to hold a *Joseph* hearing to determine whether the alien is properly included in the mandatory detention category defined by 8 U.S.C. § 1226(c)(1)(A)-(D). I will first describe the Form I-286 and the *Joseph* hearing process, and then recount the facts respecting the Named Plaintiffs, as well as this case's lengthy procedural history.

## A. Form I-286 and Mandatory Detention

In 2011 and 2012, the three Named Plaintiffs in this matter, Gayle, Sukhu, and Francois, were issued notices to appear ("NTAs") by ICE. Third Am. Compl., ECF No. 72. At that time, ICE determined that each of the Named Plaintiffs, who were lawful permanent residents of the United States, had at least one conviction rendering him subject to mandatory detention under the INA, 8 U.S.C. § 1226(c), which authorizes detention without the possibility of release on bond for any alien described in § 1226(c)(1)(A)-(D).[2]

---

[2] Title 8 of the United States Code section 1226(c)(1) provides

> The Attorney General shall take into custody any alien who—
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,

*See Gayle v. Warden Monmouth Cnty. Corr. Inst. (Gayle III)*, 838 F.3d 297 (3d Cir. 2016) (explaining that "where ICE has 'reason to believe' that an alien is 'deportable' or 'inadmissible' by virtue of having committed one of a number of specified crimes or being involved in activities threatening national security, that alien 'shall' be taken into custody 'when the alien is released [from detention for those crimes], without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense'" (alteration original) (citations and footnote omitted)). ICE issued each Named Plaintiff a Form I-286, reflecting the determination of mandatory detention.

The Form I-286 issued to Plaintiffs, the 2007 version, is different in format and in substance, from the current version.[3] In 2011 and 2012, when Plaintiffs received their

---

     (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

     (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C § 1226(c)(1)(A)-(D).

[3]    In early 2014, ICE updated its Form I-286. The new form, which is still in nationwide distribution, informs all detained aliens that they "may request a review of this custody determination by an [I]mmigration [J]udge." Second Decl. of Jose Simao in Supp. of Def.'s Opp'n to Pl.'s Fourth Mot. for Class Certification ("Simao Decl.") Ex. A. All aliens currently detained in the District of New Jersey received the updated Form I-286 and an accompanying addendum. Simao Decl. at ¶ 4, Ex. B.

NTAs, ICE provided every detainee, including Plaintiffs, under § 1226(c) mandatory

detention, with a Form I–286 notifying the detainee that

> [p]ursuant to the authority contained in Section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, [DHS] determined that pending a final determination by the [I]mmigration [J]udge in your case, and in the event you are ordered removed from the United States, until you are taken into custody for removal you shall be: detained in the custody of the Department of Homeland Security.

Below this statement, the 2007 version of Form I-286 provided boxes that were or were

not checked off, indicating whether the detained alien could or could not seek

redetermination by an Immigration Judge of ICE's custody status determination for that

alien.[4]  ECF No. 102-5 (Gayle I-286); ECF No. 102-14 (Sukhu I-286); ECF No. 31-27

(Francois Decl.).  Specifically, the first box on Form I-286, if checked, indicates that the

alien "may request" an Immigration Judge to re-determine ICE's custody decision ("First

Box").  In contrast, the second box on Form I-286, if checked, states that the alien "may

---

[4]      As noted previously, under the current version of Form I-286, *all* detained aliens— whether under § 1226(a) or § 1226(c)—are informed that they "may request a review of this custody determination by an [I]mmigration [J]udge" and must check the boxes stating that they acknowledge receipt of this notification and that they either request or do not request "an [I]mmigration [J]udge review of this custody determination."  Importantly, nothing on the current version of Form I-286 indicates to an alien that his or her detention is mandatory under § 1226(c), as opposed to discretionary under § 1226(a); in this regard, there is nothing differentiating an alien's rights based on his or her status or what type of hearing is permitted, *i.e.*, a *Joseph* hearing or a bond hearing.  These distinctions are important because aliens detained under § 1226(c) are subject to mandatory detention and not accorded a bond hearing; whereas, aliens detained under § 1226(a) are subject to discretionary detention and are entitled to a bond hearing to determine whether they may be released.  8 U.S.C. §§ 1226(a), 1226(c); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 230, 232 (3d Cir. 2011).

not request review of this determination by an Immigration Judge because the Immigration and Nationality Act prohibits your release from custody" ("Second Box").[5]

As will be discussed more fully below, Plaintiffs Gayle and Sukhu each received Form I-286s with the First Box checked off, indicating that they could seek redetermination of their custody status by an Immigration Judge. Plaintiff Francois received a Form I-286 with the Second Box checked off, perhaps erroneously, indicating that he could not seek redetermination by an Immigration Judge. All three Plaintiffs checked a box at the bottom of their respective Forms I-286 requesting a custody redetermination hearing. ECF No. 102-5 (Gayle I-286); ECF No. 102-14 (Sukhu I-286); ECF No. 31-27 (Francois Decl.). However, none of the three Named Plaintiffs received a custody redetermination hearing, also known as a "*Joseph* hearing."

### B. *Joseph* Hearings

After an alien is arrested, receives a Form I-286, and is detained, the process to determine whether an immigrant may be detained without a bond hearing is known as a "*Joseph* hearing," based on the Board of Immigration Appeals ("BIA") decision in *Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999). During a *Joseph* hearing, an Immigration Judge determines whether an alien, who is mandatorily detained, is

---

[5] Following this Court's decision in *Gayle v. Johnson (Gayle II)*, 81 F. Supp. 3d 371 (D.N.J. 2015), *appeal dismissed* (Oct. 19, 2015), *vacated and remanded sub nom. Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297 (3d Cir. 2016), ICE began including an addendum with Form I-286. *See* Simao Decl. at ¶ 4, Ex. B. The addendum delineates whether an alien is being detained under § 1226(a) (discretionary detention) or § 1226(c) (mandatory detention), and therefore, whether he or she may request an individualized bond hearing or a *Joseph* hearing. The Court has not yet had an occasion to review the accompanying addendum, but Plaintiffs also challenge the constitutionality of Form I-286 with its addendum.

properly included in the mandatory detention category, and if not, then he or she is eligible for a bond hearing and potential release under 8 U.S.C. § 1226(a).[6] *See* 8 C.F.R. § 1003.19(h)(2)(ii) ("Nothing in this paragraph shall be construed as prohibiting an alien from seeking redetermination of custody conditions . . . ."). Specifically, while the mandatorily-detained alien's removal proceedings are pending, the *Joseph* hearing provides the alien "with the opportunity to offer evidence and legal authority on the question whether the Service has properly included him within a category that is subject to mandatory detention." *In re Joseph*, 22 I. & N. Dec. at 805. However, these proceedings are not recorded by transcript, audiotape, or otherwise; there is no contemporaneous record of the Immigration Judge's hearing on whether an alien is properly included in the mandatory detention category.

Under *Joseph*, if the Government asserts a "reason to believe"[7] that the individual is subject to § 1226(c), the Government then claims the authority to mandatorily detain the

---

[6] It is in this way that *Joseph* hearings differ from bond hearings: the operative question in a *Joseph* hearing is whether the alien is properly included under § 1226(c)—whereas the outcome of a bond hearing turns on whether the criminal defendant is a flight risk or a danger to the community. 8 U.S.C. §§ 1226(a), 1226(c); *Diop*, 656 F.3d at 230, 232.

The two hearings are procedurally distinct and involve different evidentiary burdens; indeed, only if an alien, who is initially mandatorily detained pursuant to § 1226(c), is successful at a *Joseph* hearing does he or she then proceed to receive an individualized bond determination. *See Demore v. Kim*, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring).

[7] The Government notes that the Third Circuit has equated the "'reason to believe' language to a probable cause standard," at least in the context of the Fourth Amendment. *United States v. Vasquez-Algarin*, 821 F.3d 467, 480 (3d Cir. 2016) ("[L]aw enforcement armed with only an arrest warrant may not force entry into a home based on anything less than probable cause to believe an arrestee resides at and is then present within the

alien without a bond hearing. 63 Fed. Reg. 27444; 8 C.F.R. § 236.1. An individual so detained may secure a bond hearing *only* if he or she is able to persuade the Immigration Judge that the Government is "substantially unlikely" to prevail on the charges that trigger mandatory detention, *i.e.*, by affirmatively demonstrating that the Government's charges are meritless, and therefore, he or she is not "properly included" under § 1226(c). *In re Joseph*, 22 I. & N. Dec. at 806 ("[A] lawful permanent resident will not be considered 'properly included' in a mandatory detention category when an Immigration Judge . . . is convinced that the Service is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention"); *id.* at 807 ("In requiring that the Immigration Judge be convinced that the Service is substantially unlikely to prevail on its charge, when making this determination before the resolution of the underlying case, we provide both significant weight to the Service's 'reason to believe' that led to the charge and genuine life to the regulation that allows for an Immigration Judge's reexamination of this issue"). As a result of the inherently high burden placed on the alien, Plaintiffs argue that some detainees are detained for months or even years without ever having a bond hearing.

### C. Factual Background[8]

---

residence[;] . . . therefore[,] . . . reasonable belief . . . 'embodies the same standard of reasonableness inherent in probable cause.'" (citations omitted)).

[8] The following facts, except where noted, are undisputed and taken from the underlying cases *Gayle v. Napolitano*, No. 12-2806, 2013 WL 1090993 (D.N.J. Mar. 15, 2013); *Francois v. Napolitano*, No. 12-2806, 2013 WL 4510004 (D.N.J. Aug. 23, 2013); *Gayle v. Johnson (Gayle I)*, 4 F. Supp. 3d 692 (D.N.J. 2014), *vacated and remanded sub nom. Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297 (3d Cir. 2016); *Gayle II*, 81 F. Supp. 3d 371; and *Gayle III*, 838 F.3d 297.

### i. Garfield Gayle

Gayle, a Jamaican national, is a lawful permanent resident of the United States, who has lived in the United States for over 34 years. In May of 1995, Gayle was convicted of criminal possession of a controlled substance with the intent to sell in the third degree under New York State Penal Law § 220.16. Subsequently, Gayle served approximately two years of jail time and was released on parole in June 1997. After satisfying all conditions of parole, Gayle was discharged in May 2001. Thereafter, in March 2007, Gayle pleaded guilty to a misdemeanor marijuana possession charge for which he was sentenced to ten days in jail.

Approximately five years later, on March 24, 2012, a team of ICE officers arrested Gayle at his home in Brooklyn, New York. ICE charged Gayle with removal on the grounds that his 1995 conviction rendered him deportable, and also found him subject to mandatory detention, under § 1226(c), based on his March 2007 offense.[9]

Also, on that date, Gayle received a Form I-286 Notice of Initial Custody Determination with the First Box checked off, and not the Second Box. Because the form indicated that he "may request" an Immigration Judge to re-determine ICE's custody decision, Gayle checked the box located on the bottom of the form requesting such a custody redetermination. ECF No. 102-5 (Gayle I-286). However, Gayle never received a *Joseph* hearing.

On September 20, 2012, Gayle sought to terminate his removal proceedings, and on October 23, 2012, the Immigration Judge denied Gayle's request. Gayle was then

---

[9] Gayle's 1995 conviction did not subject him to mandatory detention because he was released from custody prior to the effective date of § 1226(c).

scheduled for a master calendar hearing on October 31, 2012, at which time the Immigration Judge would have ruled on his eligibility for cancellation of removal. However, due to Hurricane Sandy, this hearing was postponed and rescheduled for January 30, 2013.

On November 15, 2012, Gayle filed an Amended Petition for Writ of Habeas Corpus asserting that ICE lacks the statutory authority to detain him under 8 U.S.C. § 1226(c), because it failed to take him into custody when he was released from criminal incarceration in 2007, but instead waited five years from the date of his 2007 incarceration to arrest him. In that regard, Gayle argued that the phrase "when . . . released" unambiguously requires immediacy, and that because ICE failed to take him into custody immediately upon his release in 2007, he was not subject to mandatory detention; instead, Gayle argued that he was entitled to a bond hearing before an Immigration Judge, as required by § 1226(a). ECF No. 12 at ¶¶ 74-75. On March 15, 2013, this Court granted Gayle's individual habeas claim, finding him eligible for a bond hearing. An Immigration Judge conducted a bond hearing on March 22, 2013, and Gayle was subsequently released on bond, ECF No. 35, after having been mandatorily detained for approximately twelve months at the Monmouth County Correctional Facility in Freehold, New Jersey, and never having received a *Joseph* hearing, which he had requested.

## ii. Neville Sukhu

Sukhu is a Guyanese national and a lawful permanent resident of the United States, where he has lived for over 24 years. In 1997, Sukhu pleaded guilty to assault in the second degree under New York State Penal Law § 120.05(6). He was sentenced and served approximately 90 days of jail time, after which he was discharged from parole in September

2002. In or around May 2011, Sukhu pleaded guilty to a misdemeanor offense of theft of services (turnstile jumping) in violation of N.Y. Penal Law § 165.15 and was sentenced to time served. A few months later, on August 15, 2011, a team of ICE officers arrested Sukhu, and on the same day, ICE issued a Notice to Appear, charging Sukhu with removal under 8 U.S.C. § 1227(a)(2)(A)(i)—which governs crimes of moral turpitude—based on his 1997 conviction.

Also, on that same date, Sukhu received a Form I-286 Notice of Initial Custody Determination. ICE determined that Sukhu was subject to mandatory detention under § 1226(c) based on two different convictions: the 1997 and 2011 convictions, for crimes of moral turpitude. Similar to Gayle, Sukhu received a Form I-286 from ICE notifying him that he "shall be: detained in the custody of the Department of Homeland Security." Along with that notification, ICE checked the First Box on the Form, which like Gayle's Form, indicated that he "may request" that an Immigration Judge re-determine ICE's custody decision. Sukhu also checked the box located on the bottom portion of the form indicating that he requested a custody redetermination hearing by an Immigration Judge. ECF No. 102-14 (Sukhu I-286).

Sukhu was subject to mandatory detention under § 1226(c) for nearly 21 months at the Monmouth County Correctional Facility in Freehold, New Jersey. At no point during his detention was Sukhu provided with a *Joseph* hearing to challenge his mandatory detention.

On November 11, 2011, Sukhu, represented by counsel, attended a removal proceeding before an Immigration Judge. On December 27, 2011, Sukhu sought to terminate his deportation on the basis that his assault conviction was not a crime of moral

turpitude ("CIMT"), and thus, he was not deportable. Sukhu reasoned that the BIA decision, *Matter of Silva–Trevino*, 24 I. & N. Dec. 687 (A.G. 2008), *vacated*, 26 I. & N. Dec. 550 (A.G. 2015), which would categorize Sukhu's prior assault conviction as a CIMT, should not be followed. On March 7, 2012, the Immigration Judge rejected Sukhu's argument and found that Sukhu's assault conviction was a CIMT, pursuant to *Silva–Trevino*. On March 8, 2012, ICE filed an additional charge against Sukhu, charging him with removability under 8 U.S.C. § 1227(a)(2)(A)(ii)—two crimes of moral turpitude—based on the combination of his 1997 and 2011 convictions. On April 30, 2013, however, the Immigration Judge granted Sukhu's application for adjustment of status based on a relative petition filed by his U.S. citizen daughter, and thus, terminated his removal proceedings. On May 8, 2013, Sukhu was released from ICE custody, effectively returning Sukhu to his lawful permanent resident status. The Government did not appeal the Immigration Judge's ruling. Importantly, at no point during his twenty-one month detention did Sukhu receive a *Joseph* hearing.

### iii. Sheldon Francois

Francois is a citizen of Trinidad and Tobago and a lawful permanent resident of the United States. Francois has lived in the United States for over 24 years, and has had several misdemeanor convictions. In 2011, Francois was convicted of petit larceny under New York State Penal Law § 155.25. He was sentenced to time served of approximately one day. After satisfying all conditions of parole, Francois was discharged in May 2011. Also in 2011, Francois was convicted of criminal possession of a controlled substance in the seventh degree under New York State Penal Law § 220.03, was sentenced to time served of approximately one day, and had his driver license suspended for six months. In March

2012, Francois was again convicted for petit larceny under the same statute as his 2011 conviction, and ultimately sentenced to 30 days of incarceration.

On August 6, 2012, ICE officers arrested Francois. ICE charged Francois with removal on the grounds that his (1) 2011 drug possession conviction, and/or (2) 2011 and 2012 petit larceny convictions, each rendered him removable, and subject to mandatory detention. The Form I-286 Francois received indicated that Francois was being detained and the Second Box was checked off—he could *not* request review of his detention by an Immigration Judge. Nevertheless, Francois checked the box on the bottom of the form requesting a *Joseph* hearing. ECF No. 31-27 (Francois Decl.).

Following his arrest by ICE, Francois filed an application for cancellation of removal pursuant to 8 U.S.C. § 1229b(a) (the "Application"), seeking a form of discretionary relief from removal available to lawful permanent residents who meet certain criteria. There is no dispute that Francois was eligible for such discretionary relief. Additionally, Francois filed an individual habeas action in this Court, claiming that he had a substantial challenge to his deportability and thus should be entitled to a hearing to challenge whether he was subject to the mandatory detention statute.

The Immigration Judge held two hearings on Francois' Application, on March 18, 2013, and July 12, 2013. At the July hearing, the Immigration Judge orally ruled on Francois' Application, granting the Application, cancelling Francois' removal, and terminating the removal proceedings. The Immigration Judge further indicated that a written decision would be forthcoming, four to six weeks following the oral ruling, after which time the Government would have 30 days to decide whether to appeal the Immigration Judge's ruling to the BIA. Notwithstanding the Immigration Judge's

announcement, Francois remained mandatorily detained.  On August 23, 2013, this Court granted Francois' individual habeas claim for relief and ordered that he be given a bond hearing pursuant to *Diop*, 656 F.3d 221.  On August 30, 2013, a week after the issuance of that Order and after twelve months of detention, Francois was released on bond.  Francois' removal was terminated on September 26, 2013, and the deadline for the Government to appeal that determination expired on October 28, 2013.  *See* 8 C.F.R. 1003.38(b).

### D.  Procedural History

The first petition for habeas corpus was filed by Gayle, individually, in May 2012, urging that he be given a bond hearing because ICE violated the dictates of § 1226(c) by not detaining him immediately after he was released from state custody.  In November 2012, a First Amended Petition was filed.  The First Amended Petition added Sukhu's and Francois' individual claims for habeas relief to the petition previously filed by Gayle, ECF No. 12 ¶¶ 73-83, as well as claims brought on behalf of a putative class, seeking declaratory and injunctive relief, ECF No. 12 ¶¶ 65-72.  Also, on November 15, 2012, Plaintiffs moved to certify a class of all individuals who were or would be subject to § 1226(c) mandatory detention in the District of New Jersey.  *See* ECF No. 13.  Defendants moved to dismiss Plaintiffs' amended petition, *see* ECF No. 21, and opposed Plaintiffs' motion for class certification, *see* ECF No. 22.

On May 10, 2013, this Court heard oral argument on these motions; the Court dismissed Gayle's and Sukhu's individual habeas claims as moot,[10] but otherwise denied

---

[10]     Francois' individual claim for habeas relief, however, was not dismissed as moot. Rather, Francois was directed to submit supplemental briefing regarding his individual claim for habeas relief.

Defendants' motion to dismiss and denied without prejudice Plaintiffs' motion for class certification. This Court instructed Plaintiffs to file an amended habeas petition and class action complaint, along with a supplemental brief explaining why Francois was entitled to individual relief on his *Joseph* claims, which Plaintiffs did on May 17, 2013. Further, the Court ordered the parties to engage in class-related discovery, paying particular attention to the numerosity of § 1226(c) detainees in the District of New Jersey and the commonality of issues of law and fact relating to Defendants' process for determining § 1226(c) mandatory detention.

Although Gayle and Sukhu were released from custody on March 22, 2013 and May 8, 2013, respectively, the Third Amended Petition was filed on August 5, 2013,[11] which included individual claims, as well as claims on behalf of a putative class of aliens who are being or will be mandatorily detained pursuant to § 1226(c). The first claim asserted violations of substantive and procedural due process.

Plaintiffs' procedural due process claim challenged, and still challenges, the procedures surrounding the so-called "*Joseph* hearing," the mechanism by which an alien who is mandatorily detained pending his removal proceedings is provided "with the opportunity to offer evidence and legal authority on the question [of] whether [ICE] has properly included him within a category that is subject to mandatory detention." *In re Joseph*, 22 I. & N. Dec. at 805. Specifically, Plaintiffs allege (1) that aliens do not receive adequate notice of their right to a *Joseph* hearing through Form I-286, (2) that *Joseph* hearing procedures impermissibly place the initial burden of proof on the alien, and (3) that a contemporaneous verbatim record should be made of each *Joseph* hearing.

---

[11]     Francois was released three weeks later, on August 30, 2013.

On February 21, 2014, after the conclusion of discovery, Plaintiffs sought, again, to certify a class "consisting of all individuals in New Jersey who are or will be detained pursuant to 8 U.S.C. § 1226(c)." First Mot. to Certify, ECF No. 13. In their second motion to certify, Plaintiffs relied on Federal Rule of Civil Procedure 23(b)(2), which permits plaintiffs to bring a class action when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

On August 15, 2013, the Government moved to dismiss Plaintiffs' Third Amended Complaint. Thereafter, on March 14, 2014, this Court partially granted the Government's motion to dismiss, holding that § 1226(c) did not violate substantive due process with respect to aliens who assert a substantial challenge to their final, not threshold, removability. *Gayle I*, 4 F. Supp. 3d at 706–12. Thus, this Court dismissed Plaintiffs' petition "to the extent that Plaintiffs are requesting that a *Joseph* hearing be provided to any mandatorily detained alien who has a 'substantial challenge' to his or her removal on grounds other than whether the alien falls within the § 1226(c) categories requiring mandatory detention." *Id.* at 721. The Court held that Gayle and Sukhu had standing to challenge the Government's mandatory detention procedures, *id.* at 713–14, but found Francois lacked standing to proceed in that context, because he did not challenge whether he fell within a § 1226(c) category, *id.* at 716. The Court denied the motion to dismiss in all other respects, finding that Plaintiffs had "adequately stated a claim that the *Joseph* hearing fails to provide an alien, who has a challenge to whether he or she is included in § 1226(c), with a meaningful opportunity to challenge his or her detention status." *Id.* at 717.

The Court also terminated Plaintiffs' pending motion for class certification and directed Plaintiffs to "re-file that motion with a proposed class limited to those individuals who are entitled to a *Joseph* hearing consistent with this Opinion." *Id.* at 722.

Based on the Court's March 14, 2014 Opinion, Plaintiffs filed their third motion to certify a class on May 12, 2014, redefining the class as "all individuals who are or will be detained within the State of New Jersey pursuant to . . . 8 U.S.C. § 1226(c), and who have a substantial challenge to 'threshold deportability' or 'inadmissibility' on one of the statutory grounds that trigger mandatory detention." Third Mot. to Certify, ECF No. 96. Additionally, the parties also filed cross-motions for summary judgment.

On January 28, 2015, this Court issued an Opinion and Order addressing the summary judgment and class certification motions. *Gayle II*, 81 F. Supp. 3d 371. The Court held that the Named Plaintiffs had standing to sue as to each of their prospective class claims because (1) they "did not receive notice of their right to a *Joseph* hearing," *id.* at 384; (2) they "had sufficiently alleged injury" as a result of being subjected to the *Joseph* hearing standard, *id.* at 387; and (3) they did not receive a custody redetermination hearing that was recorded, *id.* at 398. As to the merits of Plaintiffs' claims, the Court entered partial summary judgment for the Plaintiffs. The Court found that, as a matter of Due Process, Form I-286 (both the 2007 version and the revised version) provided inadequate notice to aliens detained under § 1226(c) of the right to a *Joseph* hearing and that the Government was required to revise the form. *Id.* at 385–86. Next, this Court held that the *Joseph* hearing procedures violate Due Process for two reasons: (a) the standard at a *Joseph* hearing for determining the right to a bond determination was "virtually undefined" and, coupled with "the individual's burden under the 'substantial[ly] unlikely' standard[, there

is] a high risk of an erroneous deprivation of Plaintiffs' liberty interests," *id.* at 395, and (b) the Government should bear the initial burden at a *Joseph* hearing to establish by probable cause that an alien falls under § 1226(c), and, after the Government has made such a showing, then the burden shifts to the alien to show that the Government is "substantially unlikely to prevail" in proving the alleged charges. *Id.* at 395–98. The Court also held that while it would be preferable to have a *Joseph* hearing recorded verbatim, it is not, as a constitutional matter, required. *Id.* at 402. Lastly, I explained my reasoning for denying class certification:

> [I]f the statutes, regulations or policies at issue are held to be unconstitutional, such decision would be binding on all of the governmental agencies and would indeed inure to the benefit of all members of the proposed class, thus obviating the need for a lawsuit to proceed as a class action.

*Id.* at 403.

Thus, having denied the first motion to certify a class in May 2013 "without prejudice pending an expanded record and/or discovery, *Gayle v. Warden*, 3:12–cv–02806, ECF No. 50, at 2 (May 13, 2013), and having terminated the second motion in connection with my March 14, 2014 Opinion with instructions for Plaintiffs to re-file, *see Gayle I*, 4 F. Supp. 3d at 721–22, the Court denied Plaintiffs' class certification motion as moot, reasoning that certification was "unnecessary" because the rulings on the merits of the claims meant that "all aliens who are subjected to mandatory detention would benefit from the injunctive relief and remedies that this Court has imposed." *Gayle II*, 81 F. Supp. 3d at 404.

Both Parties appealed. On September 22, 2016, the Third Circuit vacated and remanded this Court's two prior Opinions and Orders of March 14, 2014 and January 28,

2015, finding that, absent a certified class, this Court lacked jurisdiction to reach the merits of Plaintiffs' Petition, since the individual Plaintiffs' claims were moot. *Gayle III*, 838 F.3d at 303-05. In that regard, the Third Circuit reasoned that by the time this Court ruled on the merits, all three Named Plaintiffs had been released from detention, and therefore, their individual habeas claims were mooted. *Id.* However, as the Third Circuit explained, under *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980), the mootness of Plaintiffs' claims does not deprive them of standing to assert class claims because they sought class certification prior to the resolution of their individual claims:

> A plaintiff who files a motion to certify a class prior to the expiration of his individual claims does not lose his "interest in accurate resolution of his legitimate efforts to serve as class representative," *Lusardi* [*v. Xerox Corp.*], 975 F.2d [964,] 976 [(3d Cir. 1992)], merely because the District Court, as a technical matter, denies or terminates the motion without actually deciding it. Rather, his stake "carrie[s] forward for the limited purpose of arguing a reviewable motion through to completion," *id.*, and the certification question remains concrete and fit for judicial resolution, *see Geraghty*, 445 U.S. at 402-04.
> . . .
> To hold that a plaintiff's certification claim is extinguished [in this case] would enfeeble the "flexible character" of the mootness doctrine, [*Id.*] at 400, and unmoor it from the realities of litigation.

*Gayle III*, 838 F.3d at 307–08. Based on the Third Circuit's reasoning, all three Named Plaintiffs, here, would potentially have standing to pursue class claims should the Court find certification appropriate. Indeed, all three Plaintiffs were named in the First Amended Petition, filed in November 2012, and more importantly, at the same time, the Named Plaintiffs sought to certify a class of all individuals in New Jersey subject to mandatory detention under § 1226(c). Significantly, when that motion was filed, Gayle, Sukhu and Francois were still detained, and thus, they had live individual claims. Hence, even after the Named Plaintiffs' release from detention, which resolved their habeas claims,

*Geraghty's* "relation-back" doctrine allows Plaintiffs to continue "forward [as class representatives] for the limited purpose of arguing a reviewable motion [for certification] through to completion."[12] *Lusardi*, 975 F.2d at 976; *see Geraghty*, 445 U.S. at 402-04.

In regard to this Court's previous denial of class certification, the Third Circuit held

> [N]ecessity is not a freestanding requirement justifying the denial of class certification.[13] However, it may be considered to the extent it is relevant to the enumerated Rule 23 criteria, including "that final injunctive relief or corresponding declaratory relief [be] appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). That is, there may be circumstances where class certification is not appropriate because in view of the

---

[12] The Court notes that Francois' standing only exists as to challenging the constitutionality of Form I-286, not the *Joseph* hearing or its associated procedures, because the Court has already found that Francois failed to sufficiently allege an injury-in-fact related to the *Joseph* hearing—he neither challenged his detention by requesting a *Joseph* hearing on the basis that he was not properly included under § 1226(c), nor challenged his deportability. *See Gayle I*, 4 F. Supp. 3d at 714 n.28, 716 n.30. The parties did not contest this finding, and therefore, it was ultimately not disturbed by the Third Circuit in *Gayle III*.

[13] Indeed, requiring "necessity" over and above Rule 23's enumerated criteria would create conflict with *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S.Ct. 1431, 176 L.Ed.2d 311 (2010)—in which the Supreme Court emphasized the primacy of Rule 23's enumerated criteria, explaining that the Rule admonishes that "if [Rule 23's] prescribed preconditions are satisfied '[a] class action *may be maintained*' (emphasis added)—not '*a class action may be permitted*.' . . . The discretion suggested by Rule 23's 'may' is discretion residing in the plaintiff," *id.* at 399–40, 130 S.Ct. 1431—and *Geraghty* itself—in which the Court stated that "[Rule 23] give[s] the proposed class representative the right to have a class certified if the requirements of the Rule[ ] are met," 445 U.S. at 403, 100 S.Ct. 1202. In addition, to the extent necessity would require a showing that a class action was "superior to other available methods for fairly and efficiently adjudicating the controversy," as required under Fed. R. Civ. P. 23(b)(3), such a requirement would be in tension with the absence of a "superiority" requirement in Rule 23(b)(2), *see Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362–63, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (observing that a putative class representative need not show that a Rule 23(b)(2) "class action is a superior method of adjudicating the dispute" because in 23(b)(2) cases, "superiority [is] self-evident").

*Gayle III*, 838 F.3d at 310 n.14 (citations, alterations, and emphasis original).

> declaratory or injunctive relief ordered on an individual basis, there would be no meaningful additional benefit to prospective class members in ordering classwide relief.

*Gayle III*, 838 F.3d at 310 (footnote original) (citation omitted). Relevant here, the Third Circuit noted that "if the prerequisites of Rule 23 are otherwise met, the impending mootness of individual claims counsels in favor of certification regardless of whether individual relief would theoretically render classwide relief unnecessary. For in that situation, class certification may be the only way to provide relief." *Id.* at 312 n.17.

On November 14, 2016, the Third Circuit issued its mandate, ECF No. 118, and the case was reopened in this Court on December 15, 2016, ECF No. 119. Subsequently, the parties engaged in limited discovery, resulting in the filing of a stipulation as to numerosity in the context of Rule 23(b) class certification. ECF No. 125-1. The class certification question is now ripe for determination, and Plaintiffs have renewed their motion to certify a class of all persons in the District of New Jersey, now and in the future, who are mandatorily detained pursuant to § 1226(c), "who have a substantial challenge to 'threshold deportability' or 'inadmissibility' on one of the statutory grounds that trigger mandatory detention," pursuant to Federal Rule of Civil Procedure 23(b)(2). Third Mot. to Certify (D.Ct. Dkt. No. 96). In order to answer the class certification question, this Court has been instructed by the Third Circuit to "engage in the 'rigorous analysis' of Rule 23 criteria." *Gayle III*, 838 F.3d at 312.

## DISCUSSION

### I. Rule 23

Certification of a putative class is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart*

*Stores, Inc.*, 564 U.S. at 350–51 (citations omitted).  More specifically, to satisfy the four requirements of Federal Rule of Civil Procedure 23(a),

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590–91 (3d Cir. 2012) (quoting Fed. R. Civ. P. 23) (citing *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 291 (3d Cir. 2010)).

Additionally, "a class action must be maintainable under Rule 23(b)(1), (2), or (3)." *City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 438 (3d Cir. 2017). As the proposed class in this matter seeks injunctive and declaratory relief, the basis for certification here is Rule 23(b)(2), which permits class actions where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *accord Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 287 n.52 (3d Cir. 2011). Important to the Rule 23(b)(2) analysis,

> the relief sought . . . should benefit the entire class, and the putative class must demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment in the subsequent application of principles of res judicata.

*Sullivan*, 667 F.3d at 317–18 (alterations, quotations, and citations omitted).

"The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence."  *Marcus*, 687 F.3d at 591 (citing *In re*

*Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008), *as amended* (Jan. 16, 2009)); *Wharton v. Danberg*, 854 F.3d 234, 241 (3d Cir. 2017) (citing *Wal-Mart Stores, Inc.*, 564 U.S. at 350). "In other words, to certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *Hydrogen Peroxide*, 552 F.3d at 320 (citation omitted). To determine whether the Rule 23 requirements are met, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.* at 307. Of course, the Court is mindful that "denying or granting class certification is often the defining moment in class actions (for it may sound the 'death knell' of the litigation on the part of plaintiffs, or create unwarranted pressure to settle nonmeritorious claims on the part of defendants)." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 162 (3d Cir. 2001), *as amended* (Oct. 16, 2001).

Before addressing Rule 23(a) and Rule 23(b)(2), this Court must address the class definition and class claims as required by Rule 23(c)(1)(B).

### A. Rule 23(c)(1)(B) – Class Definition

"Clearly delineating the contours of the class along with the issues, claims, and defenses to be given class treatment serves several important purposes, such as providing the parties with clarity and assisting class members in understanding their rights and making informed opt-out decisions." *Marcus*, 687 F.3d at 591–92. Accordingly, because Plaintiffs have filed more than one motion to certify a class, each with a slightly different definition (in part, due to this Court's direction), this Court notes that the class definition proposed here is as follows: the right of all persons within the District of New Jersey, now

and in the future, who are "mandatorily detained pursuant to 8 U.S.C. § 1226(c) to obtain a bond hearing on the basis of a substantial claim to relief that would prevent the entry of a removal order based on, for example, cancellation of removal or adjustment of status." Br. in Supp. of Pl.'s Third Renewed Mot. for Class Certification, at 4.  To be clear, the Named Plaintiffs move to certify a class that challenges the constitutionality of the *Joseph* hearing process, namely (1) whether Form I-286 and its accompanying addendum provide adequate notice to § 1226(c) detainees of their right to a *Joseph* hearing, (2) whether the Government should bear the initial burden of making a *prima facie* showing of removability or inadmissibility on grounds that trigger mandatory pre-removal detention, under 8 U.S.C. § 1226(c), and (3) whether a contemporaneous recording of *Joseph* hearings is constitutionally required.  However, I do not find that the Named Plaintiffs would be adequate to represent the class members as proposed.  Thus, on this motion, I will narrow the class definition.

To that end, while I find that a class can be certified to challenge the *Joseph* hearing procedures under due process, including the burden of proof allocations and the propriety of maintaining contemporaneous records, *see infra*, the Named Plaintiffs are not adequate to represent class members who would oppose the constitutionality of Form I-286.  My conclusion in this regard is based on the substantial differences between the 2007 version of Form I-286 and the current iteration with the inclusion of an addendum.  Indeed, upon a review of the current Form and the addendum, together, they appear to address the concerns that Plaintiffs have raised in their Petition.  In fact, the language included in the addendum is extracted from this Court's decision in *Gayle II*, albeit that decision has been vacated.  There is no indication on this record that the Government provides some other

form to § 1226(c) detainees in New Jersey. Thus, because the Named Plaintiffs received a substantially different version than the Forms presently being used, Plaintiffs would not be adequate to represent the interests of class members — who are current and future detainees.

As the Third Circuit has made clear, the Named Plaintiffs do not have any individual live claims remaining, and that they only have standing to pursue claims in this case if this Court finds that a class can be certified under Rule 23. Because I find that the Named Plaintiffs are not proper class representatives to bring claims regarding the current Form I-286 and the addendum, I must conclude that the Named Plaintiffs lack standing to pursue such claims. As a result, Francois shall be dismissed from suit, as he not only lacks standing to pursue challenges involving Form I-286, as explained *supra*, he also lacks standing to pursue the remaining class claims concerning the *Joseph* hearing and its procedures.[14] *See Gayle I*, 4 F. Supp. 3d at 714 n.28, 716 n.30.

For the remainder of this Court's certification analyses, the class definition will be narrowed in the following respect: the right of all persons within the District of New Jersey, now and in the future, who are mandatorily detained pursuant to 8 U.S.C. § 1226(c) to obtain a bond hearing on the basis of a substantial claim to relief that would prevent the entry of a removal order, which includes challenging the constitutionality of the *Joseph* hearing process, namely, the allocation of the burden of proof and the contemporaneous

---

[14]     Indeed, if Plaintiffs intend to continue to pursue claims involving the current Form I-286 and the addendum, Plaintiffs may move to amend their Petition to add an additional plaintiff who has been provided with the current version. However, the Court does not comment on whether such a motion would be successful.

recording of the hearing. Importantly, having dismissed Francois for lack of standing, my analyses will only focus on whether Gayle and Sukhu are adequate representatives for class members opposing the *Joseph* hearings and its associated procedures.[15]

### B. Rule 23(a) Prerequisites

#### i. Numerosity

Rule 23(a)(1) requires that a "class [be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. This requirement promotes three objectives. "First, it ensures judicial economy . . . . by freeing federal courts from the [administratively burdensome and] onerous rule of compulsory joinder . . . [and] by sparing courts the burden of having to decide numerous, sufficiently similar individual actions *seriatim*." *Marcus*, 687 F.3d at 594 (citations omitted). Second, it "creates greater access to judicial relief, particularly for those persons with claims that would be uneconomical to litigate individually." *Id.* (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)). Third, it "prevents putative class representatives and their counsel, when joinder can be easily accomplished, from unnecessarily depriving members of a small class of their right to a day in court to adjudicate their own claims." *Id.* at 594–95 (citation omitted).

Here, the parties stipulated as to numerosity. ECF No. 125-1. The stipulation provides, "[f]rom December 1, 2015, through December 1, 2016, there were a sufficient number of individuals detained under 8 U.S.C. § 1226(c) in the District of New Jersey to satisfy the numerosity requirement of Federal Rule of Civil Procedure 23(a)(1)." *Id.* at ¶

---

[15] From this point forward in the Opinion, the Court's references to the Named Plaintiffs shall only include Gayle and Sukhu.

1.  Accordingly, this stipulation serves to meet Plaintiffs' burden with respect to Rule 23(a)(1).

### ii. Commonality

Next, Rule 23(a)(2) requires "there [to be] questions of law or fact common to the class." Fed. R. Civ. P. 23. This requirement "provides the necessary glue among class members to make adjudicating the case as a class worthwhile." *Newton*, 259 F.3d at 182 (citation omitted). Of note, "Rule 23(a)(2)'s commonality requirement 'does not require identical claims or facts among class member[s].'" *Marcus*, 687 F.3d at 597 (alteration original) (quoting *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004), *abrog. on other grounds by Hydrogen Peroxide*, 552 F.3d at 318 n.18). Rather, to meet the threshold for establishing commonality, "even a single common question will do." *Wal-Mart Stores, Inc.*, 564 U.S. at 359 (citation, quotation marks, and alterations omitted); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 (3d Cir. 2009) ("[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class" (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (footnote omitted)). Thus, satisfying the commonality requirement is a low threshold. *Newton*, 259 F.3d at 183; *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1010 (3d Cir. 1986).

Simply put, class members must show only that they "are *subject* to the same harm," *Baby Neal*, 43 F.3d at 56 (emphasis original) (citation omitted), such that "class relief is consistent with the need for case-by-case adjudication, especially where [i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue," *id* at 57 (citation and internal quotations omitted, alteration original);

*accord Wal-Mart Stores, Inc.*, 564 U.S. at 350 ("What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation" (emphasis original, citation and internal quotation marks omitted)). Often, commonality is present in cases where Plaintiffs request declaratory and injunctive relief, such as here. In that regard, where the class pursues claims "against a defendant engag[ed] in a common course of conduct toward them, . . . there is . . . no need for *individualized* determinations of the propriety of injunctive relief." *Baby Neal*, 43 F.3d at 57 (emphasis original).

Here, Plaintiffs argue that the proposed class members have "common contentions," that is, the current *Joseph* hearing process, *i.e.*, the allocation of the burden of proof and lack of a contemporaneous record, is unconstitutional pursuant to *Mathews v. Eldridge*, 424 U.S. 319 (1976).[16] Plaintiffs further argue that the common contentions can be resolved with one stroke from the Court. *See Wal-Mart Stores, Inc.*, 564 U.S. at 350 ("[The proposed class members'] claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide

---

[16]    Under *Mathews*, the Court set forth a three-pronged balancing test for assessing whether an administrative procedure comports with Due Process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke).

More specifically, Plaintiffs aver that the burden (of proving that he or she is not "properly included" in the mandatory detention category) is improperly placed upon aliens under *Joseph* and therefore unconstitutional, subjecting the entire proposed class to the same harm. To support this contention, Plaintiffs cite Assistant Chief Immigration Judge Robert Weisel's testimony: "'*Joseph* indicates that the burden is on the [alien], and it's a high burden to show that they're not included in the class of individuals subject to mandatory detention.'" Br. in Supp. of Pl.'s Third Renewed Mot. for Class Certification, at 14 (quoting Yaster Decl., ECF No. 93-2, Ex. F at 95:6–9). Thus, every § 1226(c) detainee in the District of New Jersey, according to Plaintiffs, is subject to the same harm.

Second, Plaintiffs contend that without a contemporaneous record at a *Joseph* hearing, any § 1226(c) detainee whose mandatory custody redetermination is reviewed by an Immigration Judge is deprived of meaningful appellate review. Plaintiffs argue, although recording a *Joseph* hearing would not be difficult or particularly burdensome, Immigration Judges typically provide no record of their determinations, and the only record for review is often a simple check mark on Form I-286 or a written order. In this regard, Plaintiffs reason that the absence of a recording is yet another common issue of fact for all § 1226(c) detainees in the District of New Jersey.

In sum, Plaintiffs argue that the commonality requirement is satisfied because all proposed class members are denied the same Due Process protections by either the Government's application of the *Joseph* standard (*i.e.*, the allegedly improper allocation of the burden placed on § 1226(c) detainees) or the lack of a contemporaneous record at

*Joseph* hearings. To be clear, Plaintiffs contend that each proposed class member may have different facts underlying his or her immigration case and some may not prevail in arguing that they are not "properly included" in a mandatory detention category, but *every* proposed class member is subject to the same allegedly unconstitutional *Joseph* standard and procedural deficiencies. Therefore, Plaintiffs assert that declaratory and injunctive relief will resolve the same Due Process issues prevailing across the class. Thus, for more than one reason, Plaintiffs maintain that the proposed class meets the low threshold set by the commonality requirement.

In response, the Government contends that Plaintiffs lack *any* common questions of law or fact because (1) the Named "Plaintiffs' circumstances are stale" and they lack standing, and (2) the Third Circuit has joined other circuits in equating 'reason to believe' with 'probable cause.' However, the Government's arguments are prematurely made because they focus on the merits of Plaintiffs' claims, rather than the commonality requirement.

As to the Government's first contention, the Third Circuit has already addressed the standing issue raised by the Government. In November 2012, the Named Plaintiffs moved to certify a class of all individuals who were or would be subject to § 1226(c), seeking declaratory and injunctive relief. At that time, Gayle and Sukhu were in ICE's custody. Thus, as the Third Circuit explained, under *Geraghty's* relation-back doctrine, Plaintiffs' "successive, substantially similar motions to certify" provide Plaintiffs with a "stake [that] 'carrie[s] forward for the limited purpose of arguing a reviewable motion through to completion,' and the certification question remains concrete and fit for judicial resolution." *Gayle III*, 838 F.3d at 307–08 (internal citations omitted) (first alteration

added, second alteration original). Thus, the mootness of the Named Plaintiffs' individual claims is no barrier to certification.

The Government's argument that "Plaintiffs' circumstances are stale" is similarly not persuasive. According to the Government, "[t]ime has passed and the putative class members are undergoing procedures significantly different from those encountered or potentially encountered by Plaintiffs." *See* Def.'s Opp. to Pl.'s Fourth Mot. for Class Certification, at 12. To substantiate this assertion, the Government relies on the fact that the Third Circuit, in a different context, has equated the "reason to believe" standard to a standard of "probable cause" in *Vasquez-Algarin*. *Id.* at 13 (citing *Vasquez-Algarin*, 821 F.3d at 477). In that regard, the Government argues that pursuant to *Vasquez-Algarin*, "the initial burden on the government at custody redetermination hearings *may* have changed." *Id.* at 13 (emphasis added). But, the Government reasons that without "a record as to how [I]mmigration [J]udges in the District of New Jersey allocate[ ] the initial burden in *Joseph* hearings, Plaintiffs cannot establish that their claims are common with [their proposed class]," *id.* at 14. This argument lacks merit.

The Government has not produced any evidence that current detainees are subjected to any different procedures or burden of proof than those of the Named Plaintiffs when they were detained. In fact, the Government concedes as much in its briefing by explaining that it has no way of knowing how New Jersey Immigration Judges have allocated the initial burden in a *Joseph* hearing because there are no records from those hearings. *See* Def.'s Opp. to Pl.'s Fourth Mot. for Class Certification, at 13-14. I also do not find the Government's reliance on *Vasquez-Algarin* persuasive. The Government maintains, without any factual support, that *Vasquez-Algarin* altered the landscape of how *Joseph*

hearings are conducted. Without demonstrating the manner in which *Joseph* hearings have changed and how the burden of proof is being allocated, Plaintiffs and their proposed class still share a common question over whether the burden at a *Joseph* hearing is properly allocated to the detainee or the Government, which the Named Plaintiffs challenge in their procedural due process claim. Accordingly, the Court is satisfied that Plaintiffs and their proposed class meet the commonality requirement under Rule 23(a).

### iii. Typicality

The third requirement of Rule 23(a) mandates that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23. Like the commonality requirement, the typicality requirement, "serve[s] as [a] guidepost[ ] for determining whether . . . a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "Typicality, however, derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" *Marcus*, 687 F.3d at 598 (citation omitted). In this way, "typicality acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'" *Grubb v. Green Tree Servicing, LLC*, No. CV 13-07421, 2017 WL 3191521, at *20 (D.N.J. July 27, 2017) (quoting *Georgine v. Amchem Prods*., 83 F.3d 610, 631 (3d Cir. 1996), *aff'd sub nom.*, *Amchem Prods., v. Windsor*, 521 U.S. 591 (1997)).

In order to determine whether the typicality requirement is met, the court must "consider the attributes of the plaintiff, the class as a whole, and the similarity between the plaintiff and the class." *Marcus*, 687 F.3d at 598 (citation omitted). In so doing, the court assesses three concerns:

(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory;

(2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and

(3) the interests and incentives of the representative must be sufficiently aligned with those of the class

*Schering Plough*, 589 F.3d at 599 (footnote omitted). Accordingly, even if there are factual differences, so long as "the claims of the named plaintiffs and putative class members . . . arise[ ] from the same practice or course of conduct" by the defendant, and there is a "strong similarity of legal theories," typicality is established. *Newton*, 259 F.3d at 183–84 (internal citations, quotations, and footnote omitted).

Here, Named Plaintiffs and their proposed class have the same legal theories, based on Due Process, regarding the constitutionality of *Joseph* hearings, *i.e.*, the burden of proof and lack of a contemporaneous record. Indeed, it is of no moment that Named Plaintiffs and their proposed class may have different challenges to removability or inadmissibility due to their personal circumstances. So long as Plaintiffs and their class raise the same course of Government conduct that they allege deprives them of Due Process, typicality is present. And, in that respect, Named Plaintiffs oppose the immigration procedures used by the Government to mandatorily detain aliens, including the application of *Joseph*, which give rise to the claims of the class members. *See Marcus*, 687 F.3d at 598 ("If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims

of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class" (citation omitted)); *Baby Neal*, 43 F.3d at 58 ("[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories" (citation omitted)); *id.* at 63 ("[A] claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice"). In this regard, typicality is present because the Named Plaintiffs' legal theory as class representatives is the same as the class members because they challenge the same governmental practice. *See Newton*, 259 F.3d at 184.

Furthermore, Plaintiffs and their proposed class seek only declaratory and injunctive relief, and thus, there are no individual claims. As such, "[b]ecause there are no individual claims . . . , the differences among the plaintiffs do not affect the central claim that [the Government] violates a variety of the [alien]s' (putative class members') constitutional and statutory rights by [the application of *Joseph* and its related procedures]." *Baby Neal*, 43 F.3d at 63. "Indeed, because this suit seeks only declaratory and injunctive relief, the named plaintiffs are simply not asserting any claims that are not also applicable to the absentees." *Id.* Hence, "[t]here is no danger here that the named plaintiffs have unique interests that might motivate them to litigate against or settle with the defendants in a way that prejudices the absentees. *Id.*; *Weiss v. York Hosp.*, 745 F.2d 786, 808 (3d Cir. 1984) ("[I]ndividual interest in pursuing litigation where the relief sought is primarily injunctive will be minimal" (citation omitted)).

Nevertheless, the Government argues that typicality is lacking. First, the Government contends that the Named Plaintiffs' removal proceedings involved only

deportability, but that many class members' removal proceedings involve inadmissibility. And, second, the Government argues that Plaintiffs were lawful permanent residents, while many of their proposed class members are illegally present or present based on some other type of lawful admission. Neither argument is persuasive.

Indeed, detainees who seek to remain in the United States are required to proffer different types of proof depending on whether he/she is charged with inadmissibility, *see* 8 U.S.C. § 1229a(c)(2), or removability, *see* 8 U.S.C. § 1229a(c)(3). But, regardless of the types of evidence those detainees must present at the final removal proceedings, all class members, similar to the Named Plaintiffs, are subject to the same *Joseph* standard being challenged at the initial stage, because they are detained under § 1226(c). In fact, the Government previously argued that it must initially decide that all detainees are deportable (or inadmissible) in order to detain them under § 1226, even if it later concedes their deportability. Thus, no matter the difference in an alien's status, the legal theory against the Government's application of *Joseph* is still identical and typical, and the relief sought by Plaintiffs and their proposed class would reach all persons detained under § 1226(c).

The Government's second argument against typicality is similarly unconvincing. Whether a class member is a lawful permanent resident or not, that fact does not change his or her interest in the litigation or injury as a class member. Each member of the prospective class is mandatorily detained under § 1226(c), and therefore labors under the same disadvantage as did the Named Plaintiffs: all are detained under § 1226(c) and subject to the standards set forth in *Joseph*. Thus, no matter the alien's resident status, the Named Plaintiffs and the proposed class members are still required to be afforded adequate procedural safeguards against mandatory detention. In sum, this Court recognizes that

Plaintiffs and the class they propose to represent have substantially similar claims, with identical remedies, and therefore do not have conflicting legal theories. *See Georgine*, 83 F.3d at 631 (explaining that "[t]he typicality requirement . . . preclude[s] certification . . . where the legal theories of the named plaintiffs potentially conflict with those of the absentees" (citation omitted)). I find typicality is satisfied.

### iv. Adequacy of Representation

Under the last requirement prescribed by Rule 23(a), "the representative parties [must] fairly and adequately protect the interests of the class."[17] Indeed, the adequacy "inquiry has two purposes: 'to determine [1] that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, . . . and [2] that there is no conflict between the individual's claims and those asserted on behalf of the class.'" *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 132 (3d Cir. 2012) (alterations and ellipsis original) (quoting *In re Cmty. Bank of N. Va.*, 622 F.3d at 291). Generally, the adequacy of class representation assessment "tend[s] to merge with the [analysis of commonality and typicality]." *Falcon*, 457 U.S. at 157 n.13. Similar to the typicality requirement, adequacy requires "class representative[s] [to] be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prod., Inc.*, 521 U.S. at 625–26

---

[17] "Although questions concerning the adequacy of class counsel were traditionally analyzed under the aegis of the adequate representation requirement of Rule 23(a)(4) . . . those questions have, since 2003, been governed by Rule 23(g)." *Larson v. AT&T Mobility LLC*, 687 F.3d 109, 132 n.36 (3d Cir. 2012) (internal quotations and citations omitted); *see also Grubb,* 2017 WL 3191521, at *21 ("Pursuant to Rule 23(g), adequacy of class counsel is considered separately from the determination of the adequacy of the class representatives"). Of note, here, "Defendants do not question that Plaintiffs' proposed class counsel can serve as adequate representatives for the class." Def.'s Opp. to Pl.'s Fourth Mot. for Class Certification, at 18. Indeed, it is beyond any doubt that counsel from the ACLU and, similarly, Lawrence Lustberg, Esq. of Gibbons P.C.—an expert in civil rights—are adequate counsel for the proposed class.

(citations omitted). Accordingly, "[t]here are clear similarities between the components of the typicality inquiry relating to the absence of unique defenses and alignment of interests, and . . . the adequacy inquiry that focuses on possible conflicts of interest." *Schering Plough*, 589 F.3d at 602. Thus, "[b]ecause of the similarity of [the typicality and adequacy] inquiries, certain questions—like whether a unique defense should defeat class certification—are relevant under both." *Id.* (first alteration added, second alteration original) (internal citation omitted).

Here, Plaintiffs argue they can adequately represent the class because their injury is identical to the injuries sustained by the proposed class members and because they have standing to assert the class members' claims. Furthermore, Plaintiffs assert that this Court, in its findings in *Gayle I* and *Gayle II*, has already determined that the Named Plaintiffs were appropriate representatives for the claims brought on behalf of the proposed class. Specifically, Plaintiffs argue that because they were detained without bond despite having substantial challenges to their final deportability, they, therefore, are adequate class representatives. To bolster their argument, Plaintiffs point to the holding in *Gayle III*, where the Third Circuit held that the Named Plaintiffs had standing to pursue class certification.

Conversely, the Government contends that the Named Plaintiffs are not adequate representatives of the class for two reasons. First, the Government argues that Plaintiffs lack the interest and incentive to challenge the *Joseph* hearing procedures applicable to non-lawful permanent residents, since the Named Plaintiffs were all lawful permanent residents. The Government reasons that deportable lawful permanent residents "have interests that conflict with those who have shorter-term, lesser ties to the United States."

Def.'s Opp. to Pl.'s Fourth Mot. for Class Certification, at 20. As such, according to the Government, the Named Plaintiffs are entitled to greater Due Process protections than the proposed class members that are not lawful permanent residents. And so, the Government argues, the Named Plaintiffs are inadequate class representatives because their interests conflict with those of the class members who are not lawful permanent residents due to the higher level of Due Process to which Plaintiffs are entitled. In that connection, the Government contends that the differing degrees of protection under Due Process alter the way the *Mathews* balancing test is applied.

Next, the Government contends that Plaintiffs "have shown no real interest in the protections offered by *Joseph* hearings" because "their own individual claims have become moot" and the Named Plaintiffs failed "to pursue [*Joseph*] hearings in their own cases" and therefore, according to the Government, Plaintiffs are inadequate class representatives. Def.'s Opp. to Pl.'s Fourth Mot. for Class Certification, at 22. The Government argues that since Plaintiffs' claims are now moot, Plaintiffs' injuries are the same as "the public at large." In addition, the Government argues that this Court incorrectly held that Plaintiffs had standing because the Court erroneously relied on cases involving the denial of a procedure. Def.'s Opp. to Pl.'s Fourth Mot. for Class Certification, at 22–23.

The Government's arguments fail because, as Plaintiffs argue, the challenges that the Named Plaintiffs and their proposed class raise do not depend upon an alien's status. The issue facing Plaintiffs and the class members—regardless of their status—is that all individuals detained under § 1226(c) are allegedly deprived of Due Process and they challenge the same deprivation in this case. The Government, therefore, erroneously argues that due to differences in immigration status, the application of the *Mathews*

balancing test varies. Specifically, the *Mathews* balancing test assesses whether an administrative procedure comports with Due Process. *See Mathews*, 424 U.S. at 335. Under *Mathews*, the Court must engage in a three-pronged balancing test for assessing whether an administrative procedure comports with Due Process:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted). Here, Plaintiffs and the proposed class members — as § 1226(c) detainees — all challenge the same procedure, *i.e.*, the *Joseph* hearing, claiming that the Government has infringed upon their private liberty interest of remaining free from detention. In other words, the *procedure* under *Joseph* for the Named Plaintiffs and the proposed class members is the same, regardless of an alien's immigration status. Thus, the *Matthews* test would be applied by balancing the alien's liberty interest and the Government's interest in order to determine whether *Joseph* hearings comport with Due Process. In weighing these interests, no part of the *Mathews* test turns on either an alien's status (as a lawful permanent resident or a non-lawful permanent resident) or the Government's grounds for removal (deportability or inadmissibility).

Finally, the Government contends that adequacy is lacking because Plaintiffs (1) have moot claims, (2) lack standing, (3) lack an interest in the protections offered by *Joseph* hearings, and (4) failed to establish a factual record in their own proceedings. I disagree. First, the mootness of Plaintiffs' claims has been addressed previously in this Opinion. Like the commonality and typicality prongs, the lack of live individual habeas claims by the Named Plaintiffs does not render them inadequate class representatives; rather, as this

Court has already determined, there is no conflict between the Named Plaintiffs and their proposed class members, and, more importantly, the Named Plaintiffs, as explained above, have vigorously prosecuted their claims throughout this litigation. Second, Plaintiffs' standing in the class certification context has already been discussed by the Third Circuit. *See Gayle III*, 83 F.3d at 305–08. Third, interestingly, the Government previously insisted that Plaintiffs *had* obtained *Joseph* hearings, but later abandoned its position, *Gayle II*, 81 F. Supp. 3d at 386 n.18; so, Plaintiffs do have an interest in *Joseph's* protections. Indeed, the very fact that this litigation is ongoing and that Plaintiffs are still pursuing their claims after more than four and a half years is evidence of Plaintiffs' interest. Beyond asserting that Plaintiffs lack an interest in pursuing their *Joseph* related claims, the Government does not provide any evidence or indication that the Named Plaintiffs *actually* lack interest. Based on this record, there is no indication that Plaintiffs chose to forgo their redetermination hearings because they simply lacked interest. To the contrary, all three named Plaintiffs requested *Joseph* hearings because they had substantial claims to relief, but yet they were never provided with such a hearing. As such, I reject the Government's argument in this context and I find that adequacy of representation is satisfied.

In sum, this Court is satisfied for all of the above reasons that Plaintiffs have met their burden of establishing by a preponderance of the evidence each of the prerequisites of Rule 23(a). Next, because this matter seeks injunctive and declaratory relief, this Court will consider whether it is maintainable under Rule 23(b)(2). *See Amchem Prods., Inc.*, 521 U.S. at 614.

### C. Rule 23(b)(2)

Beyond meeting the Rule 23(a) requirements, Plaintiffs must also satisfy one of the Rule 23(b) requirements. *Baby Neal*, 43 F.3d at 58; Fed. R. Civ. P. 23. Relevant to this matter is Rule 23(b)(2), which requires "the party opposing the class [to have] acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23. Accordingly, "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)); *accord Sullivan*, 667 F.3d at 317–18. To be clear, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id.* If each member of the class were entitled to *different* injunctive or declaratory relief, Rule 23(b)(2) would not apply. *Id.* Likewise, Rule 23(b)(2) is not a basis for class certification "when each class member would be entitled to an individualized award of monetary damages." *Id.* at 361.

"The general applicability requirement of (b)(2) also aims to prevent prejudice to absentees by mandating that the putative class 'demonstrate that the interests of the class members are so like those of the individual representatives that injustice will not result from their being bound by such judgment.'" *Baby Neal*, 43 F.3d at 59 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988)). However, injunctive relief, "seeking to define the relationship between the defendant and the 'world at large,' will usually satisfy this

requirement." *Id.* Notably, "this requirement is almost automatically satisfied in actions primarily seeking injunctive relief." *Id.* at 58 (citing *Weiss*, 745 F.2d at 811).

Here, Plaintiffs argue that the Government policies and practices challenged by Plaintiffs are generally applicable to all class members as detainees under § 1226(c). As relief, Plaintiffs seek an Order from this Court declaring that the Government's current process for determining that a noncitizen is subject to § 1226(c) mandatory detention is unlawful, and to enjoin the Government to provide due process to mandatorily detained individuals in accordance with the governing statute and Constitution. In that regard, Plaintiffs argue that the Government has acted or refused to act on grounds generally applicable to all class members, and thus, the relief sought is injunctive and declaratory in nature, which will inure to the class as a whole.

In contrast, the Government argues that the varying immigration statuses and types of removal proceedings that § 1226(c) detainees may face, indicate the Government actions are not generally applicable to the class as a whole. To make its point, the Government contends that § 1226(c) detainees may make four different challenges before an Immigration Judge at a *Joseph* hearing:

(1) "whether the alien is actually the individual who was convicted of the crime triggering mandatory detention;"
(2) "whether a conviction occurred;"
(3) "whether that conviction remains valid for immigration purposes, following an expungement or adjustment to the term of imprisonment sentenced; and"
(4) "whether the criminal conviction is for a type of offense that triggers a ground of deportability or inadmissibility."

Def.'s Opp. to Pl.'s Fourth Mot. for Class Certification, at 25 (citing *Demore*, 538 U.S. 514 n.3 (internal citation omitted)). The Government argues that each different challenge is important under the *Mathews* balancing test, because *Mathews* "calls for a fact-specific

inquiry rather than a one-sized-fits-all solution." *Id.* Thus, according to the Government, because of the differences in potential challenges at a *Joseph* hearing and without an opportunity for class members to opt-out, Plaintiffs have different interests, which must be addressed individually. The Government's arguments are not persuasive.

Regardless of how Plaintiffs and the proposed class members could challenge their deportation in a *Joseph* hearing, they are all subject to the same allegedly unconstitutional governmental policies and practices which they challenge, *i.e.*, the improper allocation of the burden of proof and lack of contemporaneous record. And, because Plaintiffs seek injunctive and declaratory relief to remedy those alleged violations, they would similarly benefit *all* class members. Hence, Plaintiffs have satisfied the Rule 23(b)(2) requirement. Indeed, civil rights actions, such as the instant matter, challenging a governmental policy targeting a class of people, "are prime examples of what [Rule 23](b)(2) is meant to capture." *Wal-Mart Stores, Inc.*, 564 U.S. at 361 (citation and quotation omitted); *see also Hernandez v. Lynch,* No. 16-620, 2016 WL 7116611, at *19 (C.D. Cal. Nov. 10, 2016) (granting class certification to a class of § 1226(a) aliens and holding they satisfy Rule 23(b)(2)), *aff'd sub nom. Hernandez v. Sessions,* No. 16-56829, 2017 WL 4341748 (9th Cir. Oct. 2, 2017); *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 182 (D.D.C. 2015) (same); *Rivera v. Holder*, 307 F.R.D. 539, 551 (W.D. Wash. 2015) (same); *Reid v. Donelan*, 297 F.R.D. 185, 192 (D. Mass.) (granting class certification to a class of § 1226(c) aliens and holding they satisfy Rule 23(b)(2)), *enforcement granted*, 64 F. Supp. 3d 271 (D. Mass. 2014). Thus, Plaintiffs meet the Rule 23(b)(2) requirement.

### D.  8 U.S.C. § 1252(f)(1)[18]

As a "catch-all" argument, the Government contends that "this Court lacks 'jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. § 1226]' on a class-wide basis.  Def.'s Opp. to Pl.'s Fourth Mot. for Class Certification, at 27 (alterations original) (citing 8 U.S.C. § 1252(f)(1); *Gayle III*, 838 F.3d at 305 n.9).  Indeed, "Federal courts, other than the Supreme Court, are deprived of jurisdiction 'to enjoin or restrain the operation of [§ 1226(c)] other than with respect to the application of such provisions to an individual alien.'"  *Gayle III*, 838 F.3d 297, 305 n.9 (alteration original) (quoting 8 U.S.C. § 1252(f)(1) (citing *Alli v. Decker*, 650 F.3d 1007, 1016 (3d Cir. 2011) (holding that § 1252(f)(1) permits classwide *declaratory* relief))).  However, as this Court discussed in *Gayle I*, whether "8 U.S.C. § 1252(f)(1) precludes class claims for injunctive relief relating to federal immigration statutes . . . is an open question in this circuit."  *Gayle I*, 4 F. Supp. at 721 (citing *Alli*, 650 F.3d at 1009, 1013).  Thus, in *Gayle I*, this Court explained that "Plaintiffs clearly may seek class-wide *declaratory* relief without running afoul of § 1252(f)."  *Id.* (emphasis added).  On this point, the Third Circuit agreed that this Court could grant *declaratory* relief, but also held that "the scope of the *injunction* entered by

---

[18]      Section 1252(f)(1) of Title 8 of the U.S. Code provides

> In general. Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of chapter 4 of title II [8 USCS §§ 1221 et seq.], as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under such chapter have been initiated.

8 U.S.C. § 1252(f)(1).

th[is] Court" is limited.  *Gayle III,* 838 F.3d at 305 n.9.  Therefore, the Government's argument with respect to 8 U.S.C. § 1252(f)(1) has merit when fashioning an appropriate remedy in this case, but it does not preclude *class certification* here.

**CONCLUSION**

For the above reasons, Plaintiffs' motion for class certification is **GRANTED.** The Court certifies the following class: the right of all persons within the District of New Jersey, now and in the future, who are mandatorily detained pursuant to 8 U.S.C. § 1226(c) to obtain a bond hearing on the basis of a substantial claim to relief that would prevent the entry of a removal order, which includes challenging the constitutionality of the *Joseph* hearing process, namely, the allocation of the burden of proof and the contemporaneous recording of the hearing.  The representatives for this class are plaintiffs Gayle and Sukhu. However, because Francois, Gayle and Sukhu are not adequate to represent the class as to the due process claims involving the current version of Form I-286 and its addendum, they lack standing to pursue such claims.  Finally, Francois is dismissed from this case.


DATED:  November 15, 2017                                   /s/ Freda L. Wolfson
                                                           Freda L. Wolfson
                                                           U.S. District Judge